## In re Petition of Roland Garceau
## for Writ of Habeas Corpus

[ 212 A.2d 633 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Smith, J. J.**
**and O'Brien, Supr. J.**

Opinion Filed July 23, 1965

*John D. Hansen* for petitioner.

*Chester S. Ketcham,* Deputy Attorney General, for the State.

**Holden, C. J.** The petitioner, Roland Garceau, is in confinement at the State Prison in Windsor. He is held there on a mittimus issued by the Chittenden County Court on January 6, 1964. The mittimus follows the respondent's conviction on his plea of guilty to the offenses of attempted arson, burglary in the nighttime, posession of burglary tools and grand larceny, committed on November 16, 1963. He was sentenced to be confined at hard labor for a term of not less than three nor more than six years on each count with the sentences to run concurrently.

The petitioner seeks release from this commitment by application for a Writ of Habeas Corpus directed to this Court. A sworn petition

alleged that the pleas of guilty were obtained by coercion and threats and in denial of his right to counsel as guaranteed by the Vermont and United States Constitutions. The petitioner, claiming indigency, requested that an attorney be appointed to appear in his behalf.

In accordance with established procedure, the petitioner was brought before the Court on the return day by the Warden of the Prison who denied each and every allegation of the prisoner's complaint. The Court referred the cause to the Honorable Christopher A. Webber to take testimony and report his findings on the issues of fact presented by the petition and answer. Competent counsel was assigned to represent the petitioner at the hearings to be held by the Commissioner.

The petitioner appeared at these hearings with assigned counsel and testified at length. Witnesses for the State were called and cross-examined by petitioner's attorney. The Commissioner filed his report with the verbatim transcript of the evidence presented. This Court afforded both parties a hearing on the report, and oral and written arguments were presented.

The facts determined by the Commissioner are reported at length. The findings conclude: "I find that at no time was the petitioner threatened or coerced by his Attorneys, or by any other persons, to plead guilty to these charges and that his pleas of guilty to the Counts contained in the Information filed December 10, 1963, were made by him voluntarily on advice of his Attorneys, and that said pleas of guilty were not obtained by coercion or threats."

This ultimate determination by the Commissioner is well founded in the evidence presented to him. It is supported by the subordinate findings stated in his report. Indeed the correctness of the underlying facts is conceded in the petitioner's brief. No cause being shown to the contrary, the facts found by the Commissioner are conclusive. 12 V.S.A. §2042; *Wilkinson's Admr.* v. *Wilkinson,* 61 Vt. 409, 411, 17 Atl. 795; *Harris* v. *Howard's Estate,* 56 Vt. 695, 696.

Accepting the subordinate facts as true, the petitioner now takes the position that the findings establish that he has not been dealt with according to constitutional standards. Neither the report nor the record upon which it is predicated support this contention.

The claim apparently arises from an understanding entertained by counsel for the petitioner at the time of his conviction and communicated to the petitioner prior to his plea of guilty and while he was awaiting trial. It appears that John Harrington, Esquire, a member

of the bar of this State had been engaged to defend the petitioner on the charges of November 16, 1963. He also represented the petitioner in two prior prosecutions involving ten counts of criminal offenses, which were pending while the petitioner was at liberty on bail on November 16.

Harrington and his associate counsel conferred with the prosecuting officer to ascertain what recommendation he would make concerning sentence on the later charges, in the event their respondent withdrew his plea of not guilty. As a result of these talks, Harrington understood that the State would recommend a sentence of three to five years on each count, with the sentences to run concurrently. Harrington further understood that the State's Attorney would request a *nolle prosequi* be entered in the other prosecutions pending prior to November 16, 1963.

The Commissioner made no finding on whether those representing the State made any commitment in this regard. The proposed recommendation as to sentence was in fact made. When it was brought to the attention of the court, the court made it abundantly clear that it would give no advance notice what sentence would be imposed, but it would consider the recommendation of the State's Attorney.

At the time the petitioner was sentenced on the offenses of November 16, 1963, the prior prosecutions were pending. In fact, these prosecutions were not discontinued until May 3, 1965, and then by the successor in office to the State's Attorney at the time of the respondent's commitment.

■ Whether the undertaking on the part of the State's Attorney claimed by the petitioner was in fact made, or whether it was justified in the best interests of the State, in keeping with the obligations of his office, is not before us. At least the disclosure to the court was consistent with the prosecutor's duty to insure that the public faith was not compromised to the disadvantage of either the respondent or the State. See, *Commonwealth* v. *St. John,* 173 Mass. 566, 54 N.E. 254; *State* v. *Webb,* 112 W. Va. 552, 85 A.L.R. 1175, 1177. In any event, the respondent has received full measure of his understanding as it was communicated to him by the attorneys he had engaged to defend him.

■ If a plea of guilty is unfairly obtained through ignorance, fear or misunderstanding, courts, on timely application, will vacate the plea and permit the accused to stand trial on the merits without reference to his prior admission. *Kercheval* v. *United States,* 274 U.S. 220, 71 L. Ed. 1009, 1012. *Habeas corpus* is not the remedy. Otherwise the

writ would lie the moment after conviction. *Sunal* v. *Large,* 332 U.S. 174, 91 L. Ed. 1982, 1989.

The petitioner was thoroughly advised by experienced counsel of his own choice that they felt he could not be successfully defended against all counts. The possible consequences of standing trial were laid before him. The advantage of relying on the State's recommendation was similarly explored. One of his attorneys testified before the Commissioner that while he and his associate strongly recommended that the petitioner change his plea, if he disagreed with his counsel, "— if he wanted to, we would go to trial and do everything we could — that we did specifically tell him. Then he willingly agreed to change his plea." Having voluntarily accepted the State's lenient recommendation, the Great Writ will not serve him as an instrument for repudiation.

A plea of guilty is a solemn undertaking. "Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of its consequences. When one so pleads he may be bound." *Kercheval* v. *United States,* supra, 71 L. Ed. at 1012; *People* v. *Krennen,* 264 N.Y. 108, 190 N.E. 167; *Roberts* v. *Warden of the Maryland Penitentiary,* 221 Md. 576, 155 A.2d 891, 893; 22 C.J.S. Criminal Law §424(1) ; 14 Am. Jur. Criminal Law §272.

We confirm the Commissioner's report that the petitioner's plea of guilty was voluntarily made after thorough investigation and advice by competent counsel of the accused's own selection. It was made with full appreciation and understanding of the consequences. The process which holds the petitioner in confinement was issued in full recognition of his constitutional right to be heard with the assistance of counsel.

*Petition for Writ of Habeas Corpus is denied.*