## In re Maurice F. Westover

[215 A.2d 498]

October Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed December 7, 1965

*Robert H. Erdmann* for petitioner.

*Chester Ketcham,* Deputy Attorney General, for the State.

**Shangraw, J.** On March 8, 1963, the petitioner, Maurice F. Westover, pleaded guilty in the Addison Municipal Court to a charge of second degree arson, a violation of 13 V.S.A. § 503. Petitioner was sentenced to serve not less than eighteen months nor more than five years in the House of Correction at Windsor, Vermont. He now seeks a discharge from confinement by this petition for habeas corpus.

The petitioner asserts in his brief that two critical questions are presented for review. The first claim is that he was deprived of his right to have the assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution and by Chapter 1, Article 10

of the Vermont Constitution. Secondly, that he had no practical or effective guardian ad litem.

Following the issuance of a rule appointing a Commissioner a hearing was held at which time the petitioner was represented by competent counsel. The findings, as reported by the Commissioner reveal the following pertinent facts:

The petitioner was born May 5, 1942. He became 21 years of age about two months after the imposition of the sentence which he seeks to have declared invalid.

On November 17, 1962, the petitioner was employed on the farm of Philip Livingston, in Bristol, Vermont. Westover was then on parole from the Vermont State Prison at Windsor, Vermont. In the early morning of November 17, 1962, a cattle barn on the Livingston farm was destroyed by fire. Thereafter Westover left the farm. The record shows no details of his leaving nor the exact date.

On November 28, 1962, a state probation officer arrested, or attempted to arrest, Westover in Burlington. He escaped, made his way to Milton, Vermont, and there obtained possession of an automobile. Following an automobile accident in Rutland, Vermont, he was confined in Chittenden County Jail, apparently for a violation of parole and for a number of traffic offenses.

While in jail he was visited by Robert A. Richardson, a sergeant of the Vermont Police, on December 3, 1962. Richardson was assigned to investigate the fire at the Livingston farm.

Richardson questioned Westover in connection with the Livingston fire and was advised by him that John Harrington, an attorney of Burlington, Vermont, was his counsel. Richardson then contacted attorney Harrington who indicated that Richardson might talk with Westover.

Richardson offered Mr. Westover an opportunity to submit to the polygraphic examination or lie detector test. Westover replied that he would have to talk to Harrington. On December 5, 1962, Richardson again visited Westover at the jail and on this date Westover conferred with Mr. Harrington, after which he stated he would not take the lie dectector test.

On December 21, 1962, Westover was removed to Windsor State Prison, for parole violation and additional convictions of offenses unrelated to the burning of the Livingston barn.

On January 24, 1963, Richardson visited Westover at the prison. Richardson had previously telephoned Harrington who stated to him that he no longer represented Westover. At that time Richardson and Westover conversed approximately two hours. Westover persisted in refusing to take the polygraphic examination.

On January 31, 1963, Richardson again visited Westover in prison. At that time Westover agreed to go to Montpelier to take the lie detector test. Westover was transported to Montpelier and turned over to sergeant Nelson Lay, a polygraphic examiner for the Department of Public Safety. Lay was also an investigator in the State Fire Marshall's office. After having explained the manner in which the lie detector apparatus operated, Westover signed a paper agreeing to submit to the test.

During this interview Lay interrogated Westover concerning his background and circumstances surrounding his living at the Livingston farm, etc. Westover orally confessed to the crime of setting fire to the barn. Then followed the polygraphic test which in the opinion of Lay confirmed the confession. Following the test Westover at the request of Lay signed a written confession. The findings reveal that at no time was Westover physically molested or threatened with physical harm.

Westover's written consent to the taking of a lie detector test contained the statement that the result of the test would be available "to proper authorities." The first paragraph of the written confession contained the following: "I Maurice Francis Westover, age 20 of Windsor, Vt. give the following statement to Sgt. Nelson Lay of the Vt. State Police freely and voluntarily without any promises or threats having been made to me, and knowing that the same may be used as evidence in a court of law." The consent to the taking of a lie detector test, and the written confession, were both read to Westover before he signed them.

The Commissioner found that Westover's confession was obtained by "friendly persuasion rather than by threats or coercion." The petitioner was never advised of his right to have counsel nor did he ever request the assignment of counsel.

Westover was returned to the prison in Windsor, Vermont, and on March 8, 1963, arrested on the charge of second degree arson and taken to Middlebury, Vermont, and there rearrested by Sergeant Richardson on an amended warrant and information.

Before appearing in Addison Municipal Court, Westover was introduced to Wynn Underwood, an experienced and capable local at-

torney. Municipal Court Judge William S. Burrage appointed Underwood as attorney and guardian ad litem for Westover.

Upon meeting Westover at the court house Mr. Underwood discussed with Westover his background, previous records, and the confession. Following two or three conversations with the State's Attorney and Judge Burrage in chambers, Underwood secured an agreement from the State's Attorney to recommend a sentence of eighteen months to five years. Thereupon, Underwood advised Westover to plead guilty which he did. The recommendation made by the State's Attorney was accepted by Judge Burrage and sentence to the House of Correction followed.

The Commissioner found that Underwood's representation of Westover was, "under all of the circumstances, competent and fair." Further, that "He spent a total of about one and one-half hours conferring with Westover, talking with Judge Burrage and the State's Attorney in chambers, and appearing in Court. The facts of the alleged arson case were not complex, and the time spent was sufficient for an attorney of Mr. Underwood's experience to do all that could reasonably be done for his client in this case. Underwood had, in 1963, been a member of the bar for twelve years, including one term as State's Attorney of Addison County, and his knowledge and judgment in criminal defense matters was sound and mature."

At the time of his conviction in Middlebury, Westover thought that he had only about 18 months left to serve on the breaking and entering charge of which he had been previously convicted, and so would be free at the end of that time if he served only the minimum for arson. Petitioner was satisfied with his arson sentence at the time it was imposed. He was paroled from Windsor about 21 months later. Westover was, however, returned to the House of Correction in March, 1965, for a violation of the conditional pardon of the arson conviction and is now confined there.

Petitioner contends that while he was represented by counsel when arraigned, the representation of his assigned counsel followed the lie detecting test and confessions, and came too late. He points to the recent case of *Escobedo* v. *Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 C. Ct. 1758 as authority for his claim that his right to counsel matured at the accusatory stage.

In the case of *Escobedo* v. *Illinois*, supra, the defendant's specific request to see his counsel was denied and the repeated demands of

counsel to see his client at the jail were refused. Notwithstanding repeated requests by each, the defendant and his retained lawyer were afforded no opportunity to consult during the course of the entire interrogation of defendant by the police officers.

The Escobedo case is clearly distinguishable from this case. In Escobedo a trial and conviction followed. Here, no request for counsel was made by the petitioner, or denied him, when interrogated by the police. The taking of the lie detector test, and confessions, were voluntary with full appreciation of their intended use. In the instant case, the plea of guilty was not made through ignorance, fear or misunderstanding. On the contrary the record clearly reveals that the plea was voluntarily and intelligently made upon advice of counsel and with a full understanding of its consequences. When one so pleads, he may be bound. *In Re Roland Garceau,* 125 Vt. 165, 212 A.2d 633; *In Re John A. Shuttle,* 125 Vt. 257, 214 A.2d 48; *Martin v. United States,* 256 F.2d, 345, 349.

In Escobedo, the reliability of the evidence was not questioned; the attack was on admissibility of the evidence because it was obtained in violation of a fundamental constitutional right. In the present case, the doctrine set forth in the Escobedo case has no application in the light of the plea of guilty.

In view of the foregoing we need not determine whether or not the "accusatorial stage" had been reached during the periods of questioning to which Westover had been subjected, nor whether or not Escobedo applies to the admission of the type of confessions here involved.

Petitioner's assigned counsel was also appointed as his guardian ad litem. He now claims that under 33 V.S.A. § 678, and the decision in the case of *In Re Brandon Dobson,* 125 Vt. 165, 212 A.2d 620, 622, that he was entitled to the benefit of a guardian ad litem separate from his court appointed counsel.

Section 678, supra, reads:

"Whenever a minor is charged with a crime in any court and is not represented by counsel the court shall forthwith appoint a guardian ad litem to defend the interests of the minor. Whenever a minor is charged with a felony in any court, he shall be represented by counsel."

The petitioner was represented by competent counsel. His counsel was also appointed as his guardian ad litem, notwithstanding the fact

that the appointment of such guardian was not mandatory under the statute.

In the Dobson case, supra, this Court referred to the above statute and made the following observation: "The counseling of minors called for by 33 V.S.A. § 678, is best provided by a separation of the role of guardian ad litem and attorney." Such separation is not mandatory. It is not automatically required, nor does such absence of separation constitute a violation of a constitutional right as a matter of law.

It is clear from the precautionary dicta in the Dobson case, supra, · that the dual capacity of attorney and guardian ad litem is foreign to the better practice in criminal proceedings involving a minor. Dobson, supra, should be interpreted in the light that when the two functions work to the disadvantage and prejudice of a minor, then such dual representation may avoid the conviction. This is the ever present hazard when dual representation is present. Here, no disadvantage or prejudice is made to appear by reason of such dual representation.

Furthermore, Westover entered his plea and was sentenced on March 8, 1963. The Dobson decision was later rendered on July 23, 1965 and, as stated therein, its application is prospective and not retrospective.

In view of the observations heretofore made the petitioner's claims are not sustained and his petition for a writ of habeas corpus is denied.

*It is adjudged that the petitioner, Maurice F. Westover, is not illegally deprived of his liberty and he is remanded into the custody of Robert G. Smith, Superintendent of the House of Correction at Windsor, Vermont. The petition is dismissed.*