### In re Jackie W. Mossey

[274 A.2d 473]

No. 94-70

Present: Holden, C.J., Barney, Smith and Keyser, JJ., and Daley, C. Supr. J.

Opinion Filed February 2, 1971

*Patrick J. Leahy*, State's Attorney, and *Robert J. Kurrle*, Deputy State's Attorney, for the State.

*Thomas M. Reeves*, Burlington, for Defendant.

**Holden, C.J.** The petitioner seeks post conviction relief under 13 V.S.A. §§ 7131–7137 from a judgment of guilty for the offense of statutory rape. The crime was charged by an information filed in the district court on November 26, 1968. After first pleading not guilty and posting bail, the accused returned to court on March 28, 1969. At this appearance the petitioner was represented by competent experienced counsel whom he had retained of his own selection.

Prior to changing his plea from innocence to guilt, the petitioner signed a formal waiver of further proceeding and a petition to enter a plea of guilty. This instrument acknowledges that he had received a copy of the information and that he had read and discussed it with his attorney. It further states that he had told his attorney of all the facts and circumstances within his knowledge. The waiver recites that his attorney had advised him of the maximum penalty provided by law for the offense charged and the limits of the penalty are specified.

It contains the recitals:

"(6) I understand that I may, if I so choose, plead 'Not Guilty' to any offense charged against me, and that if I should choose to plead 'Not Guilty' the Constitution

guarantees me (a) the right to a speedy and public trial by jury, (b) the right to see and hear all witnesses called to testify against me, (c) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses in my favor, and (d) the right to have the assistance of counsel for my defense at all stages of the proceedings.

"(7) I also understand that if I plead 'GUILTY' the court may impose the same punishment as if I had pleaded 'Not Guilty,' stood trial and been convicted by a jury."

The waiver also contains a declaration ". . . that no officer or agent of any branch of government nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency if I would plead 'GUILTY'."

The document states that it was signed by the respondent in open court in the presence of his attorney. The waiver is also signed by the respondent's attorney, who certified that in his opinion the plea of guilty offered by the defendant was voluntarily and understandingly made and is consistent with counsel's recommendation.

The written statements of the petitioner were later confirmed by his oral statements in open court in answer to inquiry by the court and counsel. Upon this showing the court accepted the plea of guilty, ordered bail continued and directed a presentence investigation.

When investigation was made and reported to the court, further hearings were held. At the suggestion of counsel for the respondent and the State, the petitioner was ordered committed April 16, 1969, to a mental institution for psychiatric examination at the direction of the commissioner of mental health, as provided in 18 V.S.A. §§ 8501–8506. On May 23, 1969, hearings on the presentence and psychiatric reports were concluded. At that time the petitioner was sentenced to confinement of not less than seven nor more than ten years.

The present proceedings were instituted almost a year later by a sworn petition which purports to be presented by the petitioner, acting in his own behalf. It alleges that the representation accorded to the petitioner was so inadequate as

to amount to failure of due process and assigns various delinquencies on the part of his attorney. More specifically, he alleged that his attorney advised him that he, the state's attorney and the judge had reached an agreement that if he would plead guilty he would be placed on probation; but if he insisted on a jury trial and lost, he would receive a stiff prison term.

He also alleged that his conviction is the result of a conspiracy on the part of his wife, his stepdaughter, her boyfriend and his own attorney to get him out of the way by bearing false witness against him. The unsworn statements of three persons, who were later identified as correctional inmates, are attached to the petition. These papers contain hearsay statements concerning the paternity of the child born to the prosecutrix. One of the statements asserts that the petitioner "went to prison for it."

The petition was presented to the Chittenden County Court. The court appointed the attorney requested by the petitioner to assist him in these proceedings. At the hearing which followed, the petitioner, on direct examination, testified that at the time he changed his plea, his defense counsel told him "if I would plead guilty that he would get me off on probation . . . . He told me I would get up to twenty years if I went to jury trial."

The petitioner testified in cross-examination that he remembered signing the written waiver of further proceedings before changing his plea, that it was read to him by his counsel, but that he couldn't remember whether the district judge discussed the waiver with him or whether the court asked him if he understood the contents of the paper. When questioned if he recalled whether the judge asked him if any promises had been made to induce him to plead guilty, he answered "I said there wasn't . . ." but added that his counsel told him to give such an answer.

Further questioning revealed that the complaint was prepared for the petitioner by one of the prison inmates and that he was not fully aware and did not entirely understand all of the allegations in his petition. Before concluding the hearing the trial judge called upon the petitioner to tell the court anything he wanted to in connection with the subject matter

under investigation, without restriction as to the rules of evidence.

Other than to deny his guilt, the petitioner offered nothing of substance to support the other allegations of his application. The petitioner was his only witness. A representative, appearing for the State on short notice, called no witnesses to meet his testimony.

After referring to the written waiver signed and filed by the petitioner in district court, prior to changing his plea, the reviewing court reports in its findings that it did not believe the petitioner's testimony and refused to find that there was a deal of any kind involving the state's attorney, the district court and defense counsel at the prosecuting stage. Similarly, the court rejected the petitioner's claim that he was promised probation in return for his confession of guilt. The trial court also disbelieved the petitioner's testimony and found against him on the claim that defense counsel was inadequate and failed to act diligently in the prosecution.

The court made no finding on the petitioner's claim that he was a victim of conspiracy. None was called for since there was no evidence to support the allegation. *LaPlante* v. *Eastman*, 118 Vt. 220, 226, 105 A.2d 265 (1954).

The findings conclude with the determination that the "(p)etitioner's plea of guilty to the crime with which he was charged was made freely, voluntarily, and with full knowledge and understanding of the consequences." The court entered an order accordingly and dismissed the petition.

Following a timely notice of appeal and order for the transcript, counsel for the petitioner requested leave to withdraw because he was unable to find any basis for an appeal. The request was denied, his assignment was continued in this Court and he has briefed and appeared in oral argument in behalf of the petitioner. We have reviewed the entire record within the precept of *Anders* v. *California*, 386 U.S. 738, 18 L.Ed.2d 493 (1967). We affirm the order of the lower court.

The gist of the appellant's claim of error is that the State presented no evidence at the hearing in county court to meet the uncontradicted testimony of the petitioner. The contention is made that this constitutes a failure to discharge the burden

of proof as it shifted to the State upon completion of the petitioner's case.

■ ■ The allocation of the burden of proof between the applicant for post conviction relief and those who represent the State is governed by the usual principles of law according to the nature of the claim advanced. The burden rests with the party who advances the factual contention asserted in the application or the answer, as the case may be. The risk of non-persuasion is similarly assigned. No affirmative defenses were involved in the case before us. Thus the petitioner, as the advancing party, has the burden of establishing the facts alleged in his petition. *In re Clark*, 127 Vt. 555, 557, 255 A.2d 178 (1969); *In re Shuttle*, 125 Vt. 257, 258, 214 A.2d 48 (1965); ABA Standards Relating to Post-Conviction Remedies. § 4.6 (d) (Approved Draft 1968).

On the record presented it is not accurate to say that the testimony of the petitioner was not contradicted. It was directly and convincingly refuted by the transcript of the proceedings at the prosecution stage, including the documentation contained in the formal waiver and petition executed by the petitioner before changing his plea.

■ The authenticated record of the prior proceedings was competent evidence of the facts and occurrences which took place at that time, including the solemn admissions made by the petitioner in the district court. See *Garceau* v. *State of Vermont*, 126 Vt. 516, 520, 236 A.2d 661 (1967); ABA Standards Relating to Post-Conviction Remedies, *supra* § 4.6 (c) (iii). The verity of that record was not impeached by the evidence presented at the hearing. On this structure of the case it was for the trial court to determine the weight and credibility of the petitioner's testimony. *Barr's Estate* v. *Guay*, 127 Vt. 374, 379, 250 A.2d 512 (1969).

■ The fact that the petitioner disclaimed his guilt in this collateral proceeding does not impair the integrity of his plea at the time of his conviction. The petitioner, as a respondent in the district court, could voluntarily and understandingly consent to the imposition of the penalty of the law for the offense of which he was accused in the district court. This holds true ". . . even if he is unwilling or unable to admit

his participation in the acts constituting the crime." *North Carolina* v. *Alford,* 400 U.S. 25, 27 L.Ed.2d 162, 171 (1970).

The controlling standard for determining the validity of his conviction is whether his plea of guilty represents a voluntary and intelligent choice of the alternative course available to him. *North Carolina* v. *Alford, supra,* 27 L.Ed.2d at 168. His waiver specifically states those options and the choice that he made.

The trial court resolved this issue by its determination that his plea of guilty to the crime charged was made freely, voluntarily and with full knowledge and understanding of its consequences. Since this conclusion is sustained by the record and the subordinate findings, the petitioner is bound by his plea and his application for release was correctly denied. *Kercheval* v. *United States,* 274 U.S. 220, 71 L.Ed. 1009, 1012; *Petition of Dusablon,* 126 Vt. 362, 365, 230 A.2d 797 (1967); *In re Garceau,* 125 Vt. 185, 188, 212 A.2d 633 (1965).

*Order of the Chittenden County Court, dismissing the petition, is affirmed.*