### In re Steven M. Raymond

[400 A.2d 1004]

No. 14-78

Present: Daley, Larrow, Billings and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed April 3, 1979

James L. Morse, Defender General, and Charles S. Martin and William A. Nelson, Appellate Defenders, Montpelier, for Petitioner.

Mark J. Keller, Chittenden County State's Attorney, and Susan R. Via, Deputy State's Attorney, Burlington, for Defendant.

Billings, J. This is an appeal from a denial of post-conviction relief, 13 V.S.A. §§ 7131–7137. The petitioner, Steven Michael Raymond, referred to hereinafter as the defendant, was arraigned in district court on July 16, 1976, on a charge of aiding another in the commission of an armed robbery. The defendant was a minor throughout the district court proceedings, being just shy of his eighteenth birthday. Defendant's mother, Ella Raymond, was appointed to serve as his guardian ad litem. Defendant was represented by competent counsel during the entire district court proceedings.

Following a short continuance of the arraignment, granted at defendant's request, the defendant entered a plea of not guilty. He was released on conditions, and the matter was set down for trial. Some seven weeks later, the defendant, his guardian ad litem, and his attorney met in a conference room at the district courthouse and discussed a change of plea. The defendant's attorney explained to him the various defenses that might be raised to the charges, discussed the range of possible penalties upon conviction, and gave him legal advice. He recommended that the defendant plead guilty rather than

go to trial, and defendant's guardian *ad litem* agreed. Defendant, his guardian *ad litem*, and his attorney all signed a form entitled "Waiver of further proceedings upon arraignment with petition to enter plea."

The defendant then came before the district judge to change his plea. Before accepting the plea, the judge questioned the defendant and his guardian *ad litem* as to their understanding of the proceedings. He also asked if they understood what they had done in signing the waiver and request to enter plea form. The judge then explained the rights the defendant would have if he elected to go to trial and the consequences of a plea of guilty. The judge questioned each as to the voluntariness of the defendant's guilty plea.

The defendant then related to the judge the facts surrounding the commission of the offense underlying the charge. The court entered judgment of guilty and, following a presentence investigation, imposed sentence of four to six years' imprisonment.

As grounds for relief from this conviction and sentence, the defendant urges that the acceptance of his guilty plea, taken together with the involvement of his guardian *ad litem* in the decision to enter that plea, operated to deprive him of rights under the common law and the United States Constitution. He first argues that the interests of his guardian *ad litem* conflicted with his own, thus impairing his right under the common law to a loyal and responsible advisor. This claim is grounded in the defendant's assertions that his guardian *ad litem* pressured him to plead guilty because, as his mother, she was upset at his involvement in a serious crime and was fearful of losing her job, due to the ongoing emotional strain and the necessity of making court appearances. Defendant also points out in this connection the failure of the district court to inform him that he could request the appointment of another guardian *ad litem*, or to inform his mother as to her duties as guardian *ad litem* and of her right to withdraw and have another person appointed in her place. He argues a violation of due process of law in that his plea was not intelligently and voluntarily made, since he and his guardian *ad litem* did not have all their options explained to them. Defendant next argues that Vermont's rule requiring the ap-

pointment of a guardian *ad litem* in all cases where a minor is charged with a crime violates the right of a criminal defendant to personally conduct his defense without the assistance of counsel, recognized as implicit in the Sixth Amendment to the United States Constitution. Finally, defendant argues that the compulsory appointment of guardians *ad litem* discriminates against minors in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We affirm the superior court's denial of relief.

We note at the outset that the defendant failed to raise his Sixth Amendment claim at any stage of the post-conviction proceedings below. This Court will not ordinarily review a claim of error where the lower tribunal was not given an opportunity to rule on the point. *Monti* v. *Town of Northfield*, 135 Vt. 97, 369 A.2d 1373 (1977). This Court will, however, examine questions of alleged constitutional import raised for the first time on appeal. *In re Maher*, 132 Vt. 560, 326 A.2d 142 (1974). We conclude that the defendant has made an argument which, if accepted, would result in a finding that his constitutional rights had been seriously abridged. This brings it within the "rare and extraordinary cases" exception to the rule of exclusion. *Id.* at 562, 326 A.2d at 144.

We further note that a refusal to consider the argument might frustrate rather than serve the policies behind the rule. The defendant has fully briefed his Sixth Amendment claim, and the State has responded fully in its brief. Thus there is no unfair surprise. Dismissal of this claim without discussion of the merits would leave the defendant free to raise the issue in a new petition for post-conviction relief to the superior court. Although the superior court might have discretion to refuse to entertain the second petition on the ground that it seeks "similar relief," 13 V.S.A. § 7134, this is an open question, and the superior court might in any case decide to hear the matter. Or the defendant might be able to get review through a writ of habeas corpus. We therefore deem it both expedient and appropriate to discuss the defendant's claim that his right to personally conduct his defense was impaired by the appointment of a guardian *ad litem* so as to require that his conviction be vacated.

The defendant correctly points out that *In re Dobson*, 125 Vt. 165, 212 A.2d 620 (1965), requires that a guardian *ad litem* be appointed in all cases in which a minor is charged with a crime. *Id.* at 168, 212 A.2d at 622. The minor is powerless to waive appointment of a guardian *ad litem*. *Id.* at 169, 212 A.2d at 623. The defendant urges that Vermont's rule is in conflict with the Sixth Amendment to the United States Constitution as interpreted in *Faretta* v. *California*, 422 U.S. 806 (1975). In that case, Faretta, charged with grand theft, sought to represent himself before a California state court by requesting permission to do so well in advance of the date of trial. The presiding judge preliminarily ruled that Faretta could do so, but subsequently reversed his ruling, deciding explicitly, and in conformity with a decision of the highest state court, that a criminal defendant does not have a constitutional right to conduct his own defense. He appointed the public defender to represent Faretta, denied Faretta's subsequent requests for leave to act as co-counsel, and rejected his efforts to make certain motions on his own behalf.

The Supreme Court vacated Faretta's conviction because it found that the right of a criminal defendant to make his own defense personally is "necessarily implied by the structure of the [Sixth] Amendment." *Id.* at 819. The decision was addressed to the plight of an accused person who knowingly and intelligently seeks to present his defense free from the interference of an attorney. Since the defendant does not argue that his case is directly governed by *Faretta*, but rather urges that *Faretta* should be extended to preclude, on Sixth Amendment grounds, the mandatory appointment of a guardian *ad litem*, we must scrutinize closely the process by which the Supreme Court reached its result.

In a footnote to its opinion, the Court noted that an implied right can only arise "from the design and history of the constitutional text," *id.* at 819, n.15. The Court proceeded to study at length the colonial and English jurisprudence bearing on the right to representation, from which the Sixth Amendment emerged. The Court concluded that self-representation was the general practice in cases of serious crimes both in England and the colonies, and that the right to representation by a lawyer guaranteed by the amendment was seen

as a purely supplementary right during its early development. The Court took pains to point out that it was recognizing a right that had an independent existence that was not, in its view, abrogated by the Constitution, rather than reading the Constitution to provide a right previously unrecognized.

When *Faretta* is thus read as a whole, it is evident that the rule of law expressed therein cannot logically be extended to cover the case of a guardian *ad litem* appointed to represent the interests of a minor. As the defendant himself admitted in his brief in support of his petition to the superior court, the common law rule, and the rule presently in effect in most jurisdictions today, is that a minor shall appear without a guardian *ad litem* to answer a criminal charge. See *In re Moses*, 122 Vt. 36, 163 A.2d 868 (1960). This jurisdiction's departure from that rule occurred only very recently. See 1961 Vt. Acts No. 159, requiring the appointment of a guardian *ad litem* to represent a minor charged with a crime and not represented by counsel, codified at 33 V.S.A. § 678 (subsequently repealed) ; *In re Dobson, supra; In re Mears*, 124 Vt. 131, 198 A.2d 27 (1964). There is nothing whatever in the structure or the history of the Sixth Amendment that would support the implication of such a right as the defendant claims. The defendant has not demonstrated the existence of an independent right of a minor to defend a criminal charge without the appointment of a guardian *ad litem*. The fact that the defendant would have defended criminal charges without the benefit of a guardian *ad litem* under the common law rule cannot, of itself, void on constitutional grounds Vermont's departure from that rule.

This failure to demonstrate the existence of such an independent right is fatal to the defendant's *Faretta* argument, since waiver of counsel and waiver of guardianship raise distinct issues. In applying *Faretta* to a case involving self-representation, this Court took note that the Supreme Court recognized a right in a defendant to represent himself only where the defendant can make a competent and intelligent choice to do so. *State* v. *Dragon*, 135 Vt. 168, 169, 376 A.2d 12, 13 (1977). The very reason for the necessity of appointing guardians *ad litem,* however, is that minors are considered to be unable to make discriminating choices between alternative

courses of action, and hence are under a disability. *In re Dobson, supra,* 125 Vt. at 168, 212 A.2d at 622.

■ Even if we were to agree that the Sixth Amendment or notions of due process forbid a state from forcing a guardian *ad litem* upon an unwilling minor defendant, there is no indication whatever in the record that this defendant was unwilling. Unlike Faretta, who requested the right to represent himself well before trial, the defendant in this case resisted the appointment of his guardian *ad litem* only following his sentencing and commitment. Even well established constitutional rights can be waived by failure to raise them. V.R.Cr.P. 12, subsections (b)(3) and (g); *United States* v. *Schwartz,* 535 F.2d 160, 163 (2d Cir. 1976), *cert. denied,* 430 U.S. 906, *reh. denied,* 430 U.S. 976 (1977). We fail to see how it would be a different case, had the defendant claimed for the first time in his petition for post-conviction relief that his rights under *Faretta* were violated because he was represented by counsel.

■■ Defendant's equal protection argument is similarly without merit. Defendant argues that Vermont's mandatory appointment rule "singles out a class of criminal defendants for adverse procedural treatment." We do not agree. The purposes behind the rule are benign, and the defendant has failed to establish on the record that the rule discriminates against the class of individuals it was intended to protect. The defendant's assertion that the appointment of a guardian *ad litem* in his own case operated to his detriment, even if proven, would not render the mandatory appointment rule void per se. We reaffirm our recent holding in *In re Reuschel,* 135 Vt. 348, 376 A.2d 746 (1977), that the rule of *In re Dobson* does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See *Reuschel* v. *Hogan,* No. 77-176 (D. Vt. February 9, 1978), *aff'd,* No. 78-2076 (2d Cir. September 19, 1978), holding to the same effect in denying a subsequent petition for habeas corpus to the federal district court.

The defendant's first argument on appeal is that the interests of his guardian *ad litem* conflicted with his own, thus depriving him of the loyal and responsible advisor to which he

is entitled under the common law. *In re Dobson, supra,* 125 Vt. at 167, 212 A.2d at 622. Our cases have recognized that a guardian may be unsuitable when the person appointed to serve has other interests in the matter before the court. In *Dartmouth Savings Bank* v. *Estate of Schoen,* 129 Vt. 315, 276 A.2d 637 (1971), the offices of administrator d.b.n., c.t.a. of the estate of Max Schoen, and of guardian of Mr. Schoen's minor grandchildren, were lodged in a single person. A dispute concerning the validity of certain mortgages of estate property given by the administrator's predecessor, the executrix of the estate, was tried in the Orange County Court of Chancery. On appeal of the matter, this Court remanded for a new trial for lack of a proper factual record upon which to decide the legal issues raised. This Court pointedly suggested that it might be advisable for the trial court to appoint a guardian *ad litem* for each defendant then a minor, since the interests of the administrator, as their guardian, might conflict with the interests of the estate. *Id.* at 322, 276 A.2d at 641.

In the case of *In re Westover,* 125 Vt. 354, 215 A.2d 498 (1965), a habeas corpus proceeding, the petitioner complained that his counsel was also his guardian *ad litem.* This Court, recognizing that combining the offices in one individual was not the better practice, nonetheless held that separation of the functions of attorney and guardian *ad litem* was not mandatory, stating:

> when the two functions work to the disadvantage and prejudice of a minor, then such dual representation may avoid the conviction. This is the ever present hazard when dual representation is present. Here, no disadvantage or prejudice is made to appear by reason of such dual representation.

*Id.* at 359, 215 A.2d at 501.

Our cases have dealt with claims of a conflict engendered by investing one person with two official roles. We may assume, without deciding, that a conflict sufficient to void a conviction might be created in one person who is required to fulfill both an official and a natural role, where the faithful

discharge of that person's official duty is hampered. In the criminal context, prejudice would have to be shown by establishing on the record that the perceived conflict had interfered with the accused's exercise of some constitutional or other right. *In re Reuschel, supra,* 135 Vt. at 349, 376 A.2d at 748; *In re Westover, supra,* 125 Vt. at 359, 215 A.2d at 501.

The defendant has failed to meet this burden. Although the defendant established before the superior court that his mother and guardian *ad litem* urged him to plead guilty, there is no finding on the record that her advice proceeded from anything other than her concern for the defendant's best interests. Nor was there any finding on the record that the guardian's urging was a motivating factor in defendant's change of plea.

 As correctly noted by the superior court in its findings, conclusions, and order denying relief, the real issue is whether the defendant voluntarily and intelligently pleaded guilty to the charges. If so, he is bound by his plea. *State* v. *Battick,* 133 Vt. 558, 349 A.2d 221 (1975); *In re Garceau,* 125 Vt. 185, 212 A.2d 633 (1965). This Court will inquire into the circumstances surrounding a guilty plea to determine that the trial court discharged its responsibility to assure itself, before accepting the plea, that it was offered voluntarily, after proper advice, and with full understanding of its consequences. *In re Murphy,* 127 Vt. 198, 199–200, 243 A.2d 788, 789 (1968); *In re Garceau, supra,* 125 Vt. at 187–88, 212 A.2d at 635.

██ The superior court's conclusion that the petitioner's plea of guilty was entered voluntarily and with a full understanding of its consequences by the defendant as well as his guardian *ad litem* is well supported. Both signed the waiver form after conferring with the defendant's attorney. The attorney discussed the defendant's options with them, and explained the possible consequences of a guilty plea in terms of the maximum and minimum sentences possible, and gave to each his assessment of the defendant's prospects should the case go to trial. He advised them that the defendant should plead guilty.

██ The defendant indicated in open court that he was entering his plea of guilty voluntarily and free of compulsion.

Assertions in open court of voluntariness and lack of coercion, while not binding on a post-conviction proceeding, are cogent evidence against later claims to the contrary. *In re Fuller,* 135 Vt. 575, 579, 381 A.2d 1056, 1059 (1977); *In re Mossey,* 129 Vt. 133, 138, 274 A.2d 473, 476 (1971). The guardian *ad litem* indicated that the defendant's change of plea accorded with her wishes and her understanding of the consequences of a guilty plea. The defendant related the facts of his involvement in the crime with which he was charged to the court. On this record we cannot say that the superior court was wrong in concluding that the defendant's plea was properly accepted by the district court.

The defendant lastly claims a violation of due process in that the district court accepted his plea of guilty where the choice to enter that plea was made in ignorance of defendant's right to request the appointment of a guardian *ad litem* other than his mother, and of the mother's right to withdraw as guardian *ad litem,* and in the absence of any explanation to either as to the duties and responsibilities of a guardian *ad litem.* Defendant relies primarily on *In re Fuller, supra,* a post-conviction proceeding, in which the petitioner sought to overturn his rape conviction entered following his plea of guilty, on the ground that his assigned counsel had coerced the plea. Prior to trial, Mr. Fuller's assigned counsel had visited the petitioner in the Burlington Correctional Center to discuss a plea bargain agreement that he had worked out with a member of the state's attorney's staff. The defendant told his attorney at that time that he would accept the agreement. Two days later, with one day to go until jury drawing was scheduled, the petitioner told his attorney that he did not commit the crime, and that he had changed his mind about pleading guilty. The attorney forcefully told the petitioner that he would withdraw from the case and that the petitioner would have to seek other counsel if he did not honor the agreement, giving as his reason that, as the state's attorney had always upheld his part of such bargains, he felt he should withdraw rather than renege. The opinion of this Court pointed out that pressure on a client to choose one course or another should be based on the facts of the client's situation, and not on the attorney's relationship with the prosecutor.

This Court found error in the failure of the trial court to inform the petitioner of his right to have substitute counsel appointed. The failure to inform the petitioner of this option destroyed the voluntary character of the plea. "[The petitioner] may have chosen voluntarily and freely between the courses outlined to him, but those courses were not fully enumerated." *Id.* at 581, 381 A.2d at 1060.

Totally missing from the record before us is any indication that the type of pressure exerted on the petitioner in *Fuller* was exerted here. While it would unquestionably be the better practice for the presiding judge to inform both the minor defendant before him and the defendant's guardian *ad litem* concerning all of their duties, responsibilities, and options, the mere failure to do so, standing alone, does not deprive a guilty plea, otherwise intelligently and voluntarily made, of its legitimacy. The burden of showing on the record that a procedural shortcoming has hampered or frustrated the exercise of an accused's rights rests squarely on the petitioner in a post-conviction proceeding. *In re Mossey, supra; In re Clark,* 127 Vt. 555, 255 A.2d 178 (1969). The defendant failed to meet his burden in the superior court, and there is no error.

*Affirmed.*