NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 24

No. 2015-125

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Sergio Mendez | September Term, 2015 |

Thomas A. Zonay, J.

Rosemary M. Kennedy, Rutland County State's Attorney, and Alfonso Villegas, Law Clerk, Rutland, for Plaintiff-Appellee.

Dawn Matthews, and Mica Williams, Law Clerk, Prisoners' Rights Office, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **REIBER, C.J.** Defendant appeals the trial court's denial of his motion to withdraw his guilty pleas in two domestic assault cases. Defendant argues that the court erred by not using the term "deportation" or "clearly equivalent language" to advise him that deportation was a possible consequence of pleading guilty. We affirm.

¶ 2. Defendant is a citizen of the Dominican Republic who lived and worked legally in Massachusetts as a permanent resident of the United States. In June 2013, he pleaded guilty to one charge of felony domestic assault stemming from a May 2013 incident in which he attempted to strangle his girlfriend at her home in Rutland, Vermont. Defendant signed a written plea agreement prior to the change-of-plea hearing that read, in part: "I understand that if I am

not a citizen of the United States of America, admitting to facts sufficient to warrant a finding of guilt or pleading guilty or nolo contendere (no contest) to a crime may have the consequences of deportation or denial of United States citizenship."

¶ 3. Additionally, during the change-of-plea colloquy pursuant to Vermont Rule of Criminal Procedure 11(c), the court orally advised defendant:

> Do you understand that if you're not a United States citizen, this conviction could affect your ability to remain in the country, obtain your U.S. citizenship or reenter the country?

Defendant responded "I understand that." Upon accepting his change of plea, the court sentenced defendant to a term of imprisonment of eighteen to thirty-six months, all suspended, with a probationary term not to exceed two years.

¶ 4. Shortly after defendant was released on probation, the federal government issued a detainer to place him into deportation proceedings upon completion of his sentence. Then, in late October 2013, Rutland police responded to two calls in which defendant's girlfriend alleged that defendant battered or otherwise assaulted her. During the first call, defendant's girlfriend reported that he had pushed and squeezed her, causing pain in her ribs that required emergency room treatment, before defendant returned to Massachusetts. In the second call two days later, defendant's girlfriend reported that defendant was pounding on her front door and demanding entry into her residence. A police officer responded to the call, found defendant at the residence, and arrested him there.

¶ 5. As a result of the latter two incidents, in August 2014 defendant pleaded guilty both to a charge of violation of probation and to a second, misdemeanor charge of domestic assault. Again, defendant signed a written plea agreement prior to the change-of-plea hearing. The language of this agreement concerning the possible collateral consequences of a conviction on his immigration status was identical to that of the prior written agreement. Then, using

2

slightly different language as compared to the prior change-of-plea colloquy, the court orally advised defendant:

> Now do you understand that if you're not a United States citizen, that a new conviction and the probation violation may affect your ability to remain in the country, obtain U.S. citizenship or reenter the country?

Defendant responded "I understand that." The court sentenced defendant to a term of imprisonment of fifteen months to fifteen months and a day. Defendant began serving his sentence immediately.

¶ 6. In January 2015, defendant filed a motion to withdraw both of his guilty pleas on the basis that the court had not properly advised him that deportation was a risk of pleading guilty. The court denied this motion, finding that there was no substantive difference between what the court advised defendant and specifically telling him that he could be "deported."

¶ 7. Defendant now appeals, arguing that the court should have granted his motion to withdraw his guilty pleas because the court failed to use either the term "deportation" or what he describes as "clearly equivalent language"—which we understand to mean either some variation of the word "deport" or a one-word synonym of "deportation"—during the change-of-plea colloquies. Specifically, defendant argues that the phrase "affect your ability to remain in the country" does not comply with Rule 11 and 13 V.S.A. § 6565 because it is open to multiple interpretations. Conceding that "there are no 'magic words,' " defendant maintains that "deportation" carries precise weight and meaning for immigrants and would have "triggered a gut check" for defendant. The State responds that the court's language did comply with Rule 11 and 13 V.S.A. § 6565 because it more properly conveyed the meaning of "deportation" to defendant.

¶ 8. Rule 11 promotes fairness in pleas by requiring the court to ensure that the "plea is knowingly and voluntarily made" before accepting it. See State v. Riefenstahl, 172 Vt. 597,

3

599, 779 A.2d 675, 678 (2001) (mem.). It implements 13 V.S.A. § 6565, which was amended in 2005 to warn defendants of possible collateral consequences of a conviction on their immigration status. Rule 11 now reads, in part:

> (c) [T]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands:
>
>  . . .
>
> (7) that if the defendant is not a citizen of the United States, admitting to facts sufficient to warrant a finding of guilt or pleading guilty or nolo contendere to a crime may have the consequences of deportation, denial of United States citizenship, or denial of admission to the United States in the future.

V.R.Cr.P. 11(c). Rule 11 does not require the court to recite this language verbatim. See State v. Mutwale, 2013 VT 61, ¶ 8, 194 Vt. 258, 79 A.3d 850 (noting that Legislature rejected earlier draft of 13 V.S.A. § 6565 that would have compelled court to use exact language in advisements).

¶ 9. Instead, the court has discretion not only to formulate an advisement that explains the possibilities of deportation, denial of citizenship, or denial of admission to the country, but also to determine that the defendant understands this advisement. See In re Hall, 143 Vt. 590, 595, 469 A.2d 756, 758 (1983) ("The precise form of the Rule 11 colloquy engaged in by the court may vary from case to case . . . depending, among other things, on the competence of the defendant and the complexity of the legal issues involved." (citations omitted)); see also Mutwale, 2013 VT 61, ¶ 9 ("It was within the trial judge's discretion to formulate phrasing that explained to defendant the possibilities of deportation or denial of U.S. citizenship."). In exercising this discretion, the court must substantially comply with the requirements of Rule 11; the court is not required to recite its language verbatim. See id., ¶ 8 ("The trial judge was not required to recite the language of Rule 11(c)(7) verbatim; substantial compliance with the

4

requirements of Rule 11 is sufficient to withstand a challenge to the sufficiency of a plea hearing.").

¶ 10. This principle follows from one of the core requirements of Rule 11: through open dialogue with the defendant, the court must not only discuss the elements of Rule 11(c) but also ensure that the defendant understands those elements. See Hall, 143 Vt. at 595, 469 A.2d at 758 ("It is enough that the court engages in an open dialogue . . . to the end that the court is satisfied, and the record substantiates, that the defendant knows and understands the full array of legal consequences that attach to a guilty plea."). Therefore, the court may consider several factors in formulating an advisement, including both the particular circumstances leading up to the plea colloquy and the dialogue that occurred during the plea colloquy.

¶ 11. Here, the court did just that on both occasions. First, the court determined that defendant understood the written plea agreements, which explicitly stated that "pleading guilty . . . may have the consequence[] of deportation." The court asked defendant (1) whether he had read and understood the written plea agreements, (2) whether he had discussed them with his attorney, and (3) whether he was satisfied with his attorney's advice. Defendant responded affirmatively to all three questions. Second, the court orally advised defendant of the risk of deportation by rephrasing the language found in the written plea agreements. The court then asked defendant whether he understood, and defendant responded affirmatively.

¶ 12. We restrict our analysis of the court's advisements to the particular circumstances of defendant's plea colloquies. We conclude that it was within the court's discretion to formulate an advisement using the phrase "affect your ability to remain in the country." This advisement is sufficient in and of itself to explain the possibility of deportation because Rule 11 requires only substantial compliance with its terms, not a verbatim repetition of its language. We are not convinced that the phrase "affect your ability to remain in the country" is vague; in the context of defendant's plea colloquy, "deportation" and "affect your ability to remain in the

5

country" would be synonymous. Indeed, we recognize that the court's phrasing would actually heighten defendant's understanding of the possibility of deportation by presenting that possibility in its most basic sense. Although some courts may find it most appropriate to use the term "deportation" in their colloquies, the choice to use some other term or phrasing that substantially complies with Rule 11 is entirely within their discretion. Furthermore, although not necessary to reach this holding, the references in the written plea agreements to "deportation" buttress it.

¶ 13. Additionally showing that the court satisfied Rule 11—and, by extension, 13 V.S.A. § 6565—defendant unequivocally stated during the plea colloquies that he understood the court's advisements. See In re Raymond, 137 Vt. 171, 181, 400 A.2d 1004, 1009 (1979) ("Assertions in open court . . . are cogent evidence against later claims to the contrary."). This case is therefore unlike those in which the court failed to discuss the elements of Rule 11(c) and to ensure that the defendant understood those elements. See In re Manosh, 2014 VT 95, ¶ 3, 197 Vt. 424, 108 A.3d 212 (holding that Rule 11 was not satisfied when court merely asked defendant whether he understood "what's been said and what's in [the waiver of rights document]" and whether he had "any question about anything"); In re Parks, 2008 VT 65, ¶ 3, 184 Vt. 110, 956 A.2d 545 (holding that Rule 11 was not satisfied when court gave speech concerning criminal justice process rather than discuss possible legal consequences of guilty plea).

Affirmed.

FOR THE COURT:

_____

Chief Justice

¶ 14. **DOOLEY, J., concurring.** I concur in the decision of the Court because I agree that the words the trial judge used and the words in the statute are synonymous. I also agree with

6

the Court that "the court's phrasing would actually heighten defendant's understanding of the possibility of deportation by presenting that possibility in its most basic sense." Ante, ¶ 12.

¶ 15.    I cannot, however, agree entirely with the Court's rationale.  The majority cites and relies on In re Hall, 143 Vt. 590, 595, 469 A.2d 756, 758 (1983), for the proposition that "[t]he precise form of the Rule 11 colloquy engaged in by the court may vary from case to case . . . depending, among other things, on the competence of the defendant and the complexity of the legal issues involved," and on State v. Mutwale, 2013 VT 61, ¶ 8, 194 Vt. 258, 79 A.3d 850, for the proposition that only substantial compliance with Rule 11, including Rule 11(c)(7), is required.  Whatever has been our law with respect to substantial compliance with Rule 11, I do not believe that substantial compliance with the requirements contained in 13 V.S.A. § 6565(c), and imported into Rule 11(c)(7), is sufficient.

¶ 16.    I explained my views in part in a concurring opinion to the 2013 addition of V.R.Cr.P. 11.1, adopted to import a statutory addition to the advice that must be provided to a defendant on acceptance of a guilty plea, in that instance with respect to the possible collateral consequences of a guilty plea.  The relevant part of my concurring statement was:

> While I concur, I do so with some hesitancy because, as the Reporter's Notes suggest, this rule is likely to import the jurisprudence of Criminal Rule 11 into this new rule.  Because direct review of alleged Rule 11(c), (d) and (f) violations is possible only if defendant or defendant's counsel preserves an objection to Rule 11 noncompliance, an event that will never happen, see my dissent in State v. Cleary, 2003 VT 9, 175 Vt. 142, 824 A.2d 509, our regulation of compliance with these parts of Rule 11 is more theoretical than real.  Further, I think it is difficult, if not impossible to find consistency in our many decisions involving Rule 11 under the limited and vague review standard we purport to apply.

V.R.Cr.P 11.1 (Editor's note).

¶ 17.    The standard of review I was referring to was substantial compliance, the standard used in Mutwale.  A good example of the use of "substantial compliance" is State v. Riefenstahl, 172 Vt. 597, 779 A.2d 675 (2001) (mem.), a case cited and relied upon by the majority where the

7

court found substantial Rule 11 compliance from a written waiver with virtually no oral colloquy, even though the Rule requires the trial judge to "address[] the defendant personally in open court, informing him of and determining that he understands" seven categories of information. See V.R.Cr.P. 11(c).

¶ 18. In addition to the views stated in my concurrence to the adoption of V.R.Cr.P. 11.1, there is another reason why I do not believe that substantial compliance is the proper standard for a violation of 13 V.S.A. § 6565(c)(1). In enacting that statute, the Legislature also enacted a precise remedy for noncompliance. It states that if "the court fails to advise the defendant in accordance with this subsection" and the plea has negative immigration consequences, the court "shall vacate the judgment and permit the defendant to withdraw the plea or admission and enter a plea of not guilty." Id. § 6565(c)(2). This language is, unfortunately, not in the rule. There is nothing in it that says that substantial compliance with the requirements of § 6565(c)(2) is enough. I do not believe that a standard of substantial compliance, as explained in our case law, complies with § 6565(c)(2). Nor do I agree that the "it depends" standard from In re Hall complies.

¶ 19. In my opinion, by relying, in part, on a substantial compliance standard in upholding the advice given in this case, the majority has erred.

¶ 20. I am authorized to state that Justice Robinson joins this concurrence.

_____
Associate Justice

8