# In re Lawrence Fuller

[381 A.2d 1056]

No. 59-77

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed December 6, 1977

*Paul D. Jarvis*, Burlington, for Petitioner.

*William H. Sorrell*, Chittenden County State's Attorney, and *Mark J. Keller*, Deputy State's Attorney, Burlington, for Respondent.

**Larrow, J.** On January 26, 1976, appellant pleaded guilty to a charge of rape in the District Court of Vermont, Unit No. 2, Chittenden Circuit, on advice of his assigned counsel. He presently is serving a resulting sentence of eight to thirteen years, and appeals from a judgment of the Chittenden Superior Court denying him post-conviction relief under 13 V.S.A. § 7131 et seq. His petition to that court alleged a plea agreement of which he was unaware until just prior to entry of his plea, and fear engendered by threat of his counsel to withdraw, so that his plea was not voluntary or intelligent, but coerced. The original petition also claimed ineffective assistance of counsel, but this point is not raised on appeal. He urges on appeal that the trial court erred (a) in refusing to amend its findings to add one about discussion between appellant and his attorney to the effect that withdrawal by the attorney would make it necessary for appellant's parents to mortgage their home to retain another attorney, testified to by the appellant and said by the attorney to "ring a bell" in his memory; (b) in refusing to amend its conclusions of law to state that his burden of proof was by a preponderance of the evidence and not beyond a reasonable doubt, and (c) in not vacating his sentence and striking his plea in any event, upon the facts as found. We will consider those contentions in that order.

The facts found below and unchallenged here, although the subject of conflicting testimony below, may be summarized. With several pending charges of varying severity in issue, the appellant's assigned public defender entered into a plea bargain agreement with a member of the state's attorney's staff. Two additional rape charges and an assault charge were to be dropped, in exchange for pleas on the rape charge here in question and two reduced assault charges. There is no claim

that the plea bargain was not kept. From early November, 1975, to January 26, 1976, the assigned attorney conferred with appellant on about eight occasions. On Saturday morning, January 24, the attorney visited the Burlington Correctional Center and discussed the possible plea agreement with the appellant. Despite claims to the contrary, this conversation was found to be intelligent and unimpaired by claimed illness and medication.

Appellant was told by his attorney "in a forceful manner" what had been worked out, and what he might expect if he stood trial, *i.e.* a conviction. This was phrased "in unequivocal terms." The attorney's tone was louder than conversational, but did not amount to "hollering or threatening." Appellant seemed subdued, and advised the attorney he would accept the agreement. On the morning of January 26, a Monday, with jury drawing scheduled for the following day, appellant met his attorney at court, at which time he understood the proceedings and made intelligent decisions, despite his claim of illness. He told his attorney he did not commit the crime, and had changed his mind about the plea agreement. Again in a forceful tone, the attorney told him he would withdraw from the case and appellant would have to seek other counsel if appellant refused to enter into the plea agreement, because the state's attorney had always kept his part of the bargain in prior cases, and he felt he should withdraw if appellant repudiated what had been told the state's attorney. After further discussion of trial prospects, appellant again agreed to accept the plea bargain.

Appellant executed the formal "Waiver of Further Proceedings Upon Arraignment With Permission to Enter Plea." He then went into court, where the presiding judge, before accepting his plea, inquired whether he was satisfied with his attorney and understood the nature of the proceedings, whether there were any parts of the proceedings he wanted explained, whether his change of plea was freely and voluntarily made, and whether he had been coerced in any manner to change his plea. Appellant expressed his satisfaction and understanding, and said he was acting freely, voluntarily, and without coercion. He was advised by the court he would not be allowed to plead guilty if he persisted in maintaining his innocence. After the change of plea, he was again before the

court on February 18, 1976, for sentencing, and at that time did not express any dissatisfaction with prior proceedings.

Upon the foregoing findings the reviewing court held the appellant had not sustained his burden of proof, and concluded his plea had been entered knowingly, intelligently, and voluntarily.

 To these findings, appellant would have us hold that the reviewing court should have added, as he timely requested, a further finding that the assigned attorney discussed his possible withdrawal with the appellant, and the necessity for appellant's parents to mortgage their home to retain another attorney. He argues that whether or not this happened is a highly material factor in his case, and that the failure to find upon it is reversible error, necessitating a remand. He cites us to the requirement of 13 V.S.A. § 7133 that findings of fact and conclusions of law are mandatory, and to our holdings in *In re Lamphere*, 127 Vt. 604, 605, 256 A.2d 29 (1969), and *State v. Blondin*, 130 Vt. 233, 290 A.2d 36 (1972). He argues, we think correctly, that the statutory requirement for findings makes our several holdings under V.R.C.P. 52, imposing such requirement in civil cases, applicable by analogy. So also are our cases prior to adoption of the rule. Although findings under Rule 52 are no longer required except when requested, the scope of findings when so required has not been altered from previous requirements. We have used many phrases to describe when a finding is required. We have said their purpose is to make clear to the parties and to the Supreme Court what was decided and how the decision was reached. *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 367 A.2d 1363 (1976). They should be explicit on all "material issues." *In re Lamphere*, *supra*. "Essential facts" should be found. *Mandigo v. Mandigo*, 128 Vt. 446, 449, 266 A.2d 434 (1970). Perhaps most helpful, the facts "relevant to the controversy" should be found. *Potwin v. Tucker*, 126 Vt. 414, 417, 234 A.2d 430 (1967). Recitals of all the evidence and claims of the parties need not be included. *Amey v. Hall*, 123 Vt. 62, 65, 181 A.2d 69 (1962). And every item of testimony need not be processed. *Valeo v. Valeo*, 132 Vt. 526, 322 A.2d 306 (1974). Other cases express the rule with variant phraseology but similar effect. A majority of the Court are of the view that the discussion about mortgaging the home of the

appellant's parents was of sufficient significance in the case at bar to be a required contention to be disposed of in the findings, even though not specifically asserted in the motion itself. Consideration for the nature of these motions and the fact that they are often drafted without counsel has impelled the Legislature to condone informality. 13 V.S.A. § 7132.

It does not, however, follow that a remand for finding on this issue is required. Presented with a timely motion to amend its findings in this respect, the trial court refused to do so. This refusal plainly expresses the rejection of the affirmative issue as not proven, and leaves no doubt that the trial court considered the issue. *Potwin* v. *Tucker*, 126 Vt. 414, 418-19, 234 A.2d 430 (1967). Requests for findings, not granted, are considered to have been refused, and, if error, the question is preserved for appellate review. *Milne* v. *Shell Oil Co.*, 129 Vt. 375, 378, 278 A.2d 741 (1971). We cannot, therefore, fault the trial court for failure to find upon a material or essential issue, and must pass to a consideration of whether its refusal to find as requested was error.

Whatever might have been our own inclination about according credit to the appellant's version of the claimed mortgage conversation, undisputed by his attorney and, indeed, partially confirmed, we cannot hold as a matter of law that the trial court was in error in discrediting it. It was not, as the State points out, contained in the petition as filed. The trial court found appellant's narrative not worthy of credit in other respects, refusing to find claimed threats and alleged lack of knowledge of the plea bargain before court appearance. It refused to credit his claim of disabling illness. And it also was confronted with the record of his assertions in open court, of voluntariness, lack of coercion, and the like. These assertions are not binding upon him because the statute contemplates that substance shall outweigh formality, but they are nevertheless cogent evidence against his present claims, which the reviewing court should and must consider. *In re Mossey*, 129 Vt. 133, 138, 274 A.2d 473 (1971); *In re Dussault*, 128 Vt. 135, 138, 259 A.2d 776 (1969). Yielding as we must to the judgment of the trial court on issues of credibility where the evidence is conflicting, we cannot say as a matter of law that the requested finding was improperly refused.

Appellant's second claim of error is closely tied in with his third claim, because they were set forth in the same request to amend the trial court's conclusions of law. He asked, in substance, for a conclusion that his standard of proof was by a preponderance of the evidence, and, in the same request, for a conclusion that he had met that standard and established that his plea resulted from fear, and was not a voluntary and intelligent plea.

■ The parties do not disagree as to the appropriate standard of proof. It is the preponderance of evidence standard. *In re Bousley*, 130 Vt. 296, 299, 292 A.2d 249 (1972); *In re Clark*, 127 Vt. 555, 558, 255 A.2d 178 (1969). No other contention appears to have been made below, and there would seem to be serious doubt as to whether this was an issue as to which any express conclusion of law was required. But even assuming it was required, it was coupled with a request for a conclusion completely contrary to the findings which the court had made, and to its ultimate conclusions. If those findings and conclusions can stand, the rejection of the request to express the standard of proof was properly rejected, because when a request, however valid, is coupled with an invalid one, its rejection is proper. Cf. *McKinney* v. *Kelley*, 120 Vt. 299, 304, 141 A.2d 660 (1957), *cert. denied*, 356 U.S. 972 (1958), and *Anton* v. *The Fidelity & Casualty Co.*, 117 Vt. 300, 302, 91 A.2d 697 (1952). So, fundamental to a disposition of this question as well as to appellant's underlying claim for relief, is an examination of the facts which *were* found by the trial court, to see whether, as found, they support the conclusion that appellant's plea was voluntary and not coerced.

■ In the first place, while we acknowledge the difficult positions in which assigned counsel, and public defenders in particular, are often placed, we do not regard the maintenance of an overall policy of unchangeable commitment with the prosecuting officer to be an essential component of their attorney-client relationship. The ultimate decision on a plea bargain is that of the client, and the responsibility of the attorney is to see that this decision is made with full information and evaluation of available options. Pressure upon a client to elect one

alternative or the other should be based upon the facts of his particular situation, and not the relationships between his attorney and the prosecutor. The insistence by the public defender that his commitment with the prosecutor had to be honored was, we think, undue.

This case is unlike *In re Lamphere, supra,* where a misunderstanding having developed, the respondent was given an opportunity to change his plea and stand trial, which he relinquished. The appellant here does not, on the facts found, appear to have been advised of all the alternatives open to him. Faced with a jury drawing and impending trial, he was not advised that, although he could not dictate his choice of appointed counsel merely by requesting the court to appoint a different lawyer, the court will substitute counsel where it is shown, in good faith, that the mutual confidence between the lawyer and client has been destroyed. Absent a showing of bad faith, he was entitled to have substitute counsel and an appropriate continuance. *Commonwealth* v. *Velasquez,* 437 Pa. 262, 263 A.2d 351 (1970). ABA Minimum Standards For Criminal Justice, Providing Defense Services 50-51 (Approved Draft 1968). A refusal of that continuance and of a motion to withdraw, forcing him to follow his attorney's wisdom, deprives his plea of the character of a voluntary act. *Commonwealth* v. *Velasquez, supra;* see *Machibroda* v. *United States,* 368 U.S. 487 (1962). In our view, failure to inform the appellant of that available option also destroys the voluntary character of his act, since it then becomes a choice between some, but not all, of the alternatives. Crowded dockets, overloaded public defenders, and personal relationships of counsel do not alter the applicable standards. It is not enough to seize upon appellant's own open court characterization of his actions as voluntary; those statements, like his choice, were made without advice as to the options open to him. He may have chosen voluntarily and freely between the courses outlined to him, but those courses were not fully enumerated.

It is, we think, significant in connection with this appeal that the court, while it appears to have followed in general the precepts of V.R.Cr.P. 11(c) and (d) regarding advice to the defendant and inquiry about threats and duress, did not follow the dictates of V.R.Cr.P. 11(d) and (e) requiring inquiry into a

plea agreement and the disclosure of such agreement in open court. The agreement here fell squarely within those rules, as it contemplated the dismissal of other charges before the court. Clearing dockets is a commendable objective, but undue haste often defeats that purpose. Had the sentencing court followed the rule and spread the particulars of the plea agreement on the record, this ensuing litigation, as well as future trials, might well have been avoided. That, indeed, is the purpose of the rule. Reporter's Notes, V.R.Cr.P. 11(e).

The trial court should have vacated the judgment and sentence of the district court, stricken his plea of guilty, and remanded his case for trial. We can direct that result here, without the formality of remand to the Superior Court for that purpose.

*The judgment and sentence of the District Court of Vermont, Unit No. 2, Chittenden Circuit, in Docket No. 2504-75 CnCr is vacated, and appellant's plea of guilty therein is stricken; the cause is remanded to that court for further proceedings consistent with this opinion. To be certified to the District Court, the Chittenden Superior Court, and the Commissioner of Corrections.*