NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 16

No. 2014-362

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Criminal Division |
| | |
| Thomas Bryan | June Term, 2015 |

Robert P. Gerety, Jr., J.

H. Dickson Corbett, Orange County Deputy State's Attorney, Chelsea, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **SKOGLUND, J.** Defendant, Thomas Bryan, appeals from the criminal division's denial of his motion to withdraw counsel and order finding him in violation of his probation. The critical question in this case is whether sexually touching a minor violates a probation condition prohibiting violent or threatening behavior. We hold that defendant's act constitutes violent behavior and we affirm the trial court's rulings.

¶ 2. On June 20, 2012, defendant pled guilty to one count of larceny from a person in violation of 13 V.S.A. § 2503. He received a sentence of one-to-five years to serve, all suspended but forty-five days with probation. One of defendant's probation conditions, "standard Condition N," provided, "Violent or threatening behavior is not allowed at any time."

The probation officer testified that she reviewed the conditions with defendant and that he signed and dated the written probation order, acknowledging that he read and understood each condition.

¶ 3. On April 9, 2014, defendant's probation officer filed a violation of probation (VOP) complaint alleging a violation of Condition N on account of two separate occasions in which defendant touched a fourteen-year-old child over her bra while he was responsible for her care as a babysitter. The VOP complaint is based on allegations drawn from affidavits procured during the Berlin Police Department and Department for Children and Families (DCF) investigation of defendant.

¶ 4. The facts, as elaborated at the VOP merits hearing, are as follows. In August 2013, defendant spent a week living with mother and her two children, S.C., age 14, and I.R., age 9, at the Hilltop Inn motel in Berlin. During that week, S.C. and her brother were left at the motel in defendant's care while mother went to work. S.C. testified that when mother was not present, defendant would "treat [S.C.] differently" by hugging her and holding her hand. She stated that this made her feel "uncomfortable."

¶ 5. S.C. further testified that during one of the days when S.C. and I.R. were in defendant's care, S.C. was lying on one of two beds in the motel room and playing an Xbox game while I.R. sat on the other bed playing with defendant's phone. Defendant was lying on his side in the bed with S.C., blocking her body from I.R.'s view. Defendant put his arm around S.C., placed his hand on her stomach under her shirt, and asked her if it was "okay." He moved his hand up towards S.C.'s breasts, asking her if "that was okay" and stating that he would not "hurt" her. Defendant then touched S.C.'s breast over her bra. S.C. testified that this made her feel "nervous" and "scared." She asked I.R. if he would like to go to the pool so that defendant would stop touching her.

2

¶ 6.     While at the pool, S.C. was texting a female friend about an unrelated and potentially embarrassing sexual matter.  Defendant stood behind S.C. and read the text messages over her shoulder, upsetting S.C. and causing her to return to the hotel room.   Defendant followed S.C. back to the hotel room while I.R. remained at the pool.  Once in the hotel room, defendant told S.C. that he would "not tell anyone" about the text messages "as long as" S.C. did not "tell anyone about this," at which point defendant reached his hand up under S.C.'s shirt and grabbed her breast over her bra a second time.

¶ 7.     Some months later, after defendant's relationship with her mother had ended and defendant was incarcerated, S.C. revealed the alleged sexual conduct that occurred with defendant at the Hilltop Inn to mother and DCF.

¶ 8.     Prior to the VOP merits hearing, defendant moved to dismiss the VOP allegations, arguing, among other things, that even if they were true, they were not necessarily violent acts. The court denied defendant's motion to dismiss, finding substantial evidence in the affidavits filed by the State to support the VOP allegations.

¶ 9.     At the start of the VOP hearing, defendant's attorney filed a written motion to withdraw, asserting that there had been an "irreconcilable" breakdown in the attorney-client relationship.   Defendant explained that his attorney had not completed the necessary investigation for his defense because there were documents in the State's possession that his attorney did not have.  He also asserted that the attorney did not file all necessary motions and did not have time for the case.  The court rejected the motion to withdraw counsel because defendant failed to show "good cause" or provide sufficient evidence that the attorney's performance was below the applicable standard.

¶ 10.    During the VOP hearing, defendant maintained that he never had physical contact with S.C.  The court concluded that, based on a preponderance of the evidence, defendant violated probation Condition N when he twice touched the breasts of a minor for his own sexual

3

gratification. In the subsequent disposition hearing, the court revoked defendant's probation and imposed the underlying one-to-five year sentence. Defendant appealed.

¶ 11. On appeal, defendant argues that (1) the State's allegations failed to make out a prima facie case of VOP because Condition N was so vague that it could not properly inform the probationer that his conduct would result in a loss of freedom; and (2) the court committed a reversible error when it refused to withdraw counsel. The State replies that the issue surrounding Condition N's vagueness was not raised with sufficient clarity at the trial court to warrant preservation and that, even if the issue was preserved, touching a minor clearly falls under the umbrella of behavior that a defendant should understand is violent or threatening. Regarding defendant's second argument, the State contends that defendant failed to demonstrate sufficient "good cause" to succeed on a motion to withdraw counsel.

¶ 12. This Court's review of the trial court's determination that defendant violated Condition N of probation involves two steps. State v. Bostwick, 2014 VT 97, ¶ 11, 197 Vt. 345, 103 A.3d 476. First, "we examine the trial court's factual findings and uphold them if supported by credible evidence." Id. (quotation omitted). Next, we examine the trial court's legal conclusions, upholding them if they are "reasonably supported by the findings and [do] not constitute an erroneous interpretation of law." Id. (quotation omitted). Although the trial court's factual findings are not disputed on appeal, the court's legal conclusion that sexual conduct with a minor constitutes violent behavior sufficient to revoke defendant's probation requires further analysis. We review that legal question de novo. State v. Johnstone, 2013 VT 57, ¶ 14, 194 Vt. 230, 75 A.3d 642.

¶ 13. We first address the threshold issue of preservation. State v. Ovitt, 2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d 314 ("An issue is not preserved for appeal unless a party raises it with specificity and clarity below, thereby ensuring that the trial court will have an opportunity to fully develop the relevant facts and to reach considered legal conclusions."). Defendant's

choice not to orally argue that his alleged conduct does not constitute violent or threatening behavior at the VOP merits hearing did not preclude him from relying on that argument on appeal because he raised the issue with sufficient clarity in his written motion to dismiss.

¶ 14.    We therefore turn to the merits of defendant's argument regarding Condition N. We note at the outset that defendant does not claim Condition N is an unconstitutional condition of probation on its face.[1]   Defendant instead brings an as-applied challenge: the State failed to make its prima facie case because the language "violent or threatening behavior" was too vague to put him on notice that sexually touching a child would violate Condition N.[2]

¶ 15.    To make out a prima facie case of VOP, the State must establish by a preponderance of the evidence that the defendant violated an "express" condition of probation. An "express" probation condition is one that "give[s] fair notice as to what acts may constitute a violation of [defendant's] probation."  State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988); see also State v. Blaise, 2012 VT 2, ¶ 15, 191 Vt. 564, 38 A.3d 1167.  In State v. Sanville, this Court explained:

> To be charged with violating probation, a defendant must have notice before the initiation of a probation revocation proceeding of what circumstances will constitute a violation of probation.  Due process requires that such notice inform him as to what acts may constitute a violation of his probation, thereby subjecting him to a loss of liberty.  While the notice may come in the form of a probation order presented for the defendant's signature, still, the

---

[1]   The conditions of probation imposed by the trial court were drawn from a probation-order template generated by the Office of the Court Administrator.  The form identifies conditions A through S (including probation Condition N) as "standard conditions of probation."  The only explicit condition imposed on all probationers is the one providing that the court may revoke an offender's probation if the offender is convicted of another offense during the period when the sentence is still subject to revocation.  28 V.S.A. § 252(a); see State v. Campbell, 2015 VT 50, ¶ 30, __ Vt. __, 120 A.3d 1148 (Dooley, J., concurring).

[2]   State v. Austin, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996), held that a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating where the challenge could have been raised on direct appeal from the sentencing order. Even when raised for the first time after revocation of probation, however, Austin expressly allows as-applied challenges, such as defendant's.  Id.

> defendant is entitled to know what conduct is forbidden before the initiation of a probation revocation proceeding.

2011 VT 34, ¶ 8, 189 Vt. 626, 22 A.3d 450 (quotations omitted).

¶ 16. Thus, if defendant did not have "fair notice" that using his authority position to coerce and sexually touch a minor constituted a violent act, the State could not demonstrate a prima facie case that defendant violated an "express" probation condition, and the VOP conviction cannot stand. See State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996).

¶ 17. Our probation condition precedent provides no direct analogy to the case at hand. In prior cases where this Court contemplated violations of the probation condition prohibiting "violent" and "threatening" behavior (here Condition N), we addressed the terms separately, as distinct types of action. The application and interpretation of this condition has generally been challenged in cases where the State alleges that the probationer engaged in threatening behavior that was primarily or exclusively speech. See, e.g., Johnstone, 2013 VT 57, ¶ 17 (holding that defendant had not violated probation condition prohibiting violent or threatening behavior when he was simply "mouthing off" to his girlfriend and did not intend to put his probation officer in fear of harm); Sanville, 2011 VT 34, 189 Vt. 626, ¶ 12, 22 A.3d 450 (mem.) (holding that probation condition prohibiting "violent" or "threatening" behavior at any time did not afford defendant a reasonable opportunity to know that heated verbal arguments with his landlord would result in a loss of freedom). Here, defendant challenges the application of Condition N based on allegations that he engaged in violent behavior in the form of physical action. We do not look to determine whether defendant's behavior was threatening because the VOP complaint charged the offense as a violent act.

¶ 18. This Court addressed whether certain acts by a probationer constituted violent behavior in the context of probation revocation in State v. Woolbert, 2007 VT 26, 181 Vt. 619,

6

926 A.2d 626 (mem.).[3]  In <u>Woolbert</u>, we held that "substantial and repeated physical force beyond mere yelling or intimidating behavior" would constitute violent behavior in violation of probation Condition M (identical to Condition N here).  <u>Id</u>. ¶ 9.  The defendant's act of aggressively kicking a corrections officer met this standard.  <u>Id</u>.

¶ 19.  Defendant argues that <u>State v. Madigan</u>, No. 2011-103, 2011 WL 4974812 (Vt. Mar. 25, 2011) (unpub. mem.) confirms that sexual contact with a child is not violent behavior. We disagree.  <u>Madigan</u>, as well as <u>State v. Madison</u>, 163 Vt. 390, 659 A.2d 124 (1995), were heard before single Justices of this Court (Justices Johnson and Morse, respectively) and considered whether certain sexual offenses involving a child constituted violent crimes for purposes of determining bail eligibility under 13 V.S.A. § 7553(a).

¶ 20.  In <u>Madison</u>, the trial court's decision to deny bail to a defendant charged with sexual assault on a minor was upheld because the alleged offense fit within a dictionary definition of violence: the "abusive or unjust use of power."  163 Vt. at 395, 659 A.2d at 127. Over a decade later, in <u>Madigan</u>, the holding was that lewd and lascivious conduct with a child is not a violent crime for purposes of the bail statute because such conduct does not require touching or contact, let alone touching that could be characterized as physically forceful.[4]  2011 WL 4974812, at *3-4 (citing <u>State v. Wiley</u>, 2007 VT 13, ¶ 11, 181 Vt. 300, 917 A.2d 501).

¶ 21.  The decision in <u>Madigan</u> relied on "the Legislature's failure to specifically state" whether lewd and lascivious conduct should be considered a violent act for the purpose of

---

[3]  In <u>State v. Higgins</u>, 147 Vt. 506, 519 A.2d 1164 (1986) (per curiam), we addressed the probation condition proscribing "violent or threatening behavior," but summarily affirmed the VOP, noting only that the evidence supported the trial court's conclusion that the defendant's sexual conduct was "violent and assaultive."  <u>Id</u>. at 508, 519 A.2d at 1166.

[4]  The defendant in <u>Madigan</u> was charged under 13 V.S.A. § 2602(a)(1), which states that "[n]o person shall willfully and lewdly commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child." 2011 WL 4974812, at *2-3; 13 V.S.A. § 2602(a)(1)(2011).

determining bail. Madigan, 2011 WL 4974812, at *3. The Legislature has since amended the statute to explicitly state that lewd and lascivious conduct with a child shall be considered a violent act for the purpose of determining bail. 2015, No. 43, § 1; see 13 V.S.A. § 2602(f). To be sure, the amendment that became law after the date of defendant's alleged conduct could not have provided him with notice that his acts could be considered violent. But neither did Madigan establish that defendant's acts were nonviolent. To the contrary, Madison and Madigan support our holding here. Those cases mutually established that for purposes of bail eligibility, a charged offense that involves sexual conduct with a minor must have an element of physical contact to be considered violent. In this case, it is undisputed that defendant's VOP was based on physical contact with minor S.C.

¶ 22. The Legislature's classification of crimes as violent or nonviolent in the related context of probation eligibility further undermines defendant's argument regarding Madigan, and provided some notice to defendant that his conduct would be considered violent. The definition of a nonviolent felony found in 28 V.S.A. § 205(a)(3)(A) specifically excludes "sexual exploitation of children in violation of 13 V.S.A. chapter 64" from the list of nonviolent offenses eligible for probation, indicating that the Legislature intended this conduct to be considered a violent felony. 28 V.S.A. § 205(a)(3)(B)(ii). Chapter 64 of Title 13 specifies that "sexual exploitation of children" includes "sexual conduct" with a child "under the age of 16," including "any intentional touching, not through the clothing, of the . . . breasts of another with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desire of any person." 13 V.S.A. § 2821(2)(C). The question of whether defendant's touching of S.C.'s breasts under her shirt but over her bra was "through the clothing," or whether defendant could be convicted of this offense is not before us. The provision addresses behavior substantially similar to that of defendant, however, and thus indicates a widely held understanding that sexually touching a minor's breasts is in the realm of behavior considered violent.

8

¶ 23. The statutory classification of violent crimes for purposes of probation eligibility and our decisions in the related context of bail eligibility may not have, on their own, provided "fair notice" to defendant that his actions would violate probation Condition N, but the plain and ordinary meaning of "violent" provided such notice. Where, as here, we have not previously addressed the type of behavior at issue with respect to probation Condition N, we return to the plain and ordinary meaning of the probation condition's terms. See Bostwick, 2014 VT 97, ¶¶ 20-21 (finding plain meaning of probation condition contradicted trial court's preferred interpretation). To determine the ordinary meaning, we frequently embrace dictionary definitions. See State v. Danaher, 174 Vt. 591, 593-94, 819 A.2d 691, 695 (2002) (analyzing plain meaning of "contact"). We have recognized that even where a term is common and versatile, as with "violent," the existence of multiple definitions "does not render that term ambiguous or vague." Id. at 593, 819 A.2d at 695.

¶ 24. "[V]iolence" may be defined as "the exercise of physical force" so as to "violate," "injur[e]," "damage," or "forcibly interfer[e] with personal freedom," Oxford English Dictionary 654-655 (2d ed. 1989) [hereinafter Oxford], or the "abusive or unjust use of power," The American Heritage Dictionary 1431 (New College ed. 1979) [hereinafter American Heritage]. "[V]iolent" actions are those "characterized . . . by unjust or improper force." Webster's New International Dictionary 2846 (2d ed. 1961) [hereinafter Webster's]. As especially relevant to this case, Webster's suggests that to determine whether a given exercise of physical force is violent, it should be "considered with reference to its effect on [the recipient]." Webster's, supra, at 2846.

¶ 25. Applying these definitions to defendant's conduct demonstrates defendant oppressively, unjustly, and corruptly exploited his power imbalance to target S.C. in a manner that may be, fairly and plainly, considered violent. As an adult and caretaker, defendant was in an authoritative position over S.C., a child, and he used that position of power to sexually violate

9

her.  In one of the two incidents, defendant coerced the fourteen-year-old S.C. into acquiescence by threatening to tell others about S.C.'s private text messages if she did not let him touch her breast.  By employing threats in his efforts to engage in sexual conduct with his minor female target, defendant engaged in "abusive or unjust use of power."  Madison, 163 Vt. at 395, 659 A.2d at 127; American Heritage, supra, at 1431.  Although reaching up S.C.'s shirt and touching her breasts twice may not have been "aggressive" within the meaning of Woolbert, S.C.'s young age and the sexual nature of defendant's acts made his conduct an "unjust" and "improper" use of force.  Woolbert, 2007 VT 26, ¶ 9; Webster's, supra, at 2846.  Indeed, defendant's sexual contact with S.C. "violat[ed]" and "damag[ed]" her.  Oxford, supra, at 655.  S.C.'s testimony that she was "scared" and "afraid" throughout the encounter indicates the emotional harm S.C. suffered when defendant engaged her in sexual conduct.  She was placed in fear as a consequence of his approaches, utterances, and contact, which violated her right to personal integrity and freedom from harm.  Beyond S.C.'s fear and discomfort during the encounters, defendant's actions "forcibly interfer[ed]" with S.C.'s "personal freedom."  Id.  This is not "common behavior."  Post, ¶ 39.  We find no difficulty at all in concluding that this conduct was "violent" for purposes of his probation obligations and the determination of whether he was in violation of them.

¶ 26.  As applied to the case at hand, we find no ambiguity or vagueness on which the defendant may base his objection to Condition N. Defendant had fair notice that the factual circumstances present here—an authority position used to coerce and sexually touch a minor—constituted a violent act.  The construction of the term in this case will not result in overbroad application in the future.  Clarity and fair notice of probation obligations are indeed critical considerations for the Court.  But these principles are not offended in consequence of the circumstances here.  Thus, the trial court correctly held based on a preponderance of the

10

evidence that defendant's sexual conduct with S.C. established an act of violence and a violation of probation Condition N.

¶ 27. Defendant's second claim on appeal concerns the superior court's refusal to appoint substitute counsel. A motion for substitute counsel is left to the discretion of the court, State v. Ahearn, 137 Vt. 253, 263, 403 A.2d 696, 703 (1979), and the party claiming abuse of that discretion bears the burden of proof. Ahearn, 137 Vt. at 267, 403 A.2d at 705. Defendant "must show that the court failed to exercise its discretion, or that its discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable . . . . This Court will not interfere if there is a reasonable basis for the court's discretionary action." Id. (citations omitted). The court's rejection of a motion to withdraw counsel will be upheld "[a]bsent unusual circumstances." State v. Hicks, 167 Vt. 623, 625, 711 A.2d 660, 662 (1998) (mem) (explaining that denial of last minute requests for counsel are entitled to "extraordinary" deference).

¶ 28. In general, indigent defendants have no right to counsel of their own choosing. Replacement counsel is appointed at the discretion of the trial court and is approved only when the moving party demonstrates "good cause" for counsel's withdrawal. Ahearn, 137 Vt. at 263, 403 A.2d at 703; V.R.Cr.P. 44(c). The court's responsibility when assigning counsel is to provide the defendant "with competent counsel of sufficient ability and experience to fairly represent the [defendant], to present his defense, and to protect his rights." State v. Bruley, 131 Vt. 366, 367, 306 A.2d 672, 673 (1973). When faced with a request for substitute counsel:

> [T]he court must consider such circumstances as whether present counsel is reasonably likely to afford the defendant effective assistance, whether the mutual confidence between the lawyer and client has been destroyed, whether the defendant has unduly delayed in seeking a new assignment, and whether the defendant is merely engaging in delaying tactics.

Ahearn, 173 Vt. at 263, 403 A.2d at 703 (citation omitted).

11

¶ 29. Defendant seeks replacement of counsel due to an alleged difficulty reaching counsel by phone and counsel's failure to obtain a missing document unrelated to the case. Additionally, defendant and his attorney agreed that there had been a breakdown of communications and that replacement of counsel would be beneficial. The State argues that counsel represented the defendant for four months and that the two were observed communicating effectively throughout that time. Because the motion to substitute counsel was presented to the court on the morning of the merits hearing, the State asserts that defendant's motion was tantamount to a "request for a continuance for reasons that could have been raised anytime during the four months between appointment of counsel and the merits hearing."

¶ 30. This Court has granted motions for replacement of counsel in "unusual" situations. In re Fuller, 135 Vt. 575, 581, 381 A.2d 1056, 1060 (1977) (granting motion to replace counsel when attorney inhibited defendant's voluntary consent to plea bargain by pressuring defendant to accept and failing to provide counsel on alternative options). But if defendant's dissatisfaction with counsel is not the result of counsel's incompetency or a conflict of interest, this Court is likely to find that the trial court properly exercised discretion in denying the motion to withdraw. State v. O'Connell, 147 Vt. 60, 63-64, 510 A.2d 167, 169 (1986) (denying motion to substitute counsel based on disagreement over retention of independent witness when counsel deemed competent). Additionally, circumstantial factors, such as defendant's use of counsel throughout the trial and the last-minute nature of the motion itself, may be utilized to assess whether communication has been "destroyed" or if the motion would deliberately delay proceedings. Id. at 63, 510 A.2d at 168-69.

¶ 31. There is little evidence to show that the mutual confidence between defendant and his attorney had been "destroyed." In re Fuller, 135 Vt. at 581, 381 A.2d at 1060. As in O'Connell, defendant had worked with counsel for four months prior to the merits hearing. The court found here that, while issues apparently existed, there was no indication that the attorney's

performance was below standard. Since the motion to withdraw counsel was filed on the day of the hearing, the court was justified in considering the potential for delay. We thus see no unusual or extraordinary circumstances to indicate that the trial court's dismissal was unreasonable or an abuse of discretion.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 32. **DOOLEY, J., dissenting.** There are parts of the majority opinion I agree with, but I can't agree with its conclusion. We agree generally on the standard the State must show was met in order to conclude a breach of the probation condition occurred—that is, the probationer must have fair notice that the conduct he is found to engage in violated the condition. State v. Galanes, 2015 VT 80, ¶ 11, __ Vt. __, 124 A.3d 800. We agree that this determination requires that we look at the wording of the probation condition in relation to the conduct alleged. We also apparently agree that we have to look at accepted descriptions and definitions of the words in the condition—typically from dictionaries. Id. ¶ 13. I would add that we should engage in this process while always keeping in mind the "fair notice" standard.

¶ 33. The controlling language here is brief—defendant is prohibited from engaging in "violent behavior." I note that it was imposed as a standard condition in connection with a conviction for larceny from a person.[5]

---

[5] I note in passing that there is a serious question whether the condition is proper for a property crime. See State v. Putnam, 2015 VT 113, ¶ 36, __ Vt. __, __ A.3d __ (condition must be related to the offense). Defendant did not challenge the condition at the time of its imposition so its validity is not before us. If we must assume that it was validly adopted, I think the disconnect between the crime and the behavior alleged in support of the probation violation is relevant to whether defendant had fair notice of its applicability to that conduct.

¶ 34.    There is no dispute that defendant's conduct was "behavior," so the issue is whether defendant had fair notice that the conduct was "violent."  To determine this, the majority looks at three dictionaries, first noting that a word is not vague if there are multiple definitions: the Oxford English Dictionary, the American Heritage Dictionary, and Webster's New International Dictionary.  It discusses only a part of the definitions, apparently on the theory that, if it can find any definition that applies to defendant's conduct, defendant had fair notice that his conduct violated the probation condition.  It is in applying this theory that I part company with the majority's analysis.

¶ 35.    My first problem with the analysis is that the majority largely shifts in analysis to the word "violence," rather than "violent," although both are defined in the three dictionaries.  That is true of the "especially relevant" definition from Webster's New International Dictionary.  Ante, ¶ 24.

¶ 36.    My second problem with the majority analysis is that it ignores the main elements of the definition of "violent."  From Webster's, the main definitions are "moving, acting, or characterized by physical force" and "great, extreme, intense."  Webster's New International Dictionary 2846 (2d. ed. 1961).  All of the relevant definitions in the American Heritage Dictionary require excessive use of physical force: (1) "Displaying or proceeding from extreme physical force or rough action;" (2) "Exhibiting intense force or effect; extreme; severe;" (4) "characterized by the immoderate use of force; severe; harsh."  The American Heritage Dictionary 1431 (New College ed. 1979).  The Oxford English Dictionary is a special case because it has very many definitions of "violent," spanning a page and a half of small print, with sources in English literature going back to the fourteenth century.  Given the standard of fair notice, I suggest that the most relevant definition from this source—if we use any—is labeled "in intensive use" and states "very or extremely great, strong or severe."  Oxford English Dictionary 645 (2d ed. 1989).

¶ 37. My third and greatest problem is that the majority introduces factors to determine whether behavior is violent that are irrelevant to any definition. It does so because they relate to improper and offensive nature of defendant's behavior. Thus, it says that sexually touching a child against her will fits within the definition of "violent." No definition of "violent" suggests that conduct becomes violent because it is done for sexual gratification as opposed to another reason. No definition suggests that a touching is violent with respect to a child that would not be violent with respect to an adult. These are, of course, highly relevant factors in determining what consequences to impose as a result of a probation violation. They could also be factors in drafting a probation condition. Even more significant, defendant's conduct is likely to constitute the separate crime of lewd and lascivious conduct, and the prosecutor stated in his motion to dismiss that he was filing such a charge. Probation Condition B, imposed on defendant, provides that defendant not be convicted of a separate crime, a ground for probation revocation the State can charge.

¶ 38. I recognize that the majority attempts to find sufficient breadth in the definition of "violent" by noting that a few of the alternative definitions relate to use of force generally if it interferes with personal freedom or was abusive, unjust, or improper. I would argue that the use of minor alternative definitions generally violates the fair notice standard, but in this case their use creates a serious overbreadth problem. When viewed most broadly, a touching,[6] the conduct alleged here and found by the trial court, involves a use of force to a minute degree, but few would ever conceive that a touching without more is alone violent behavior. If it is violent behavior, then an intentional touching alone would always be considered improper because an intentional touching without consent is a tortious act, a common-law battery. See Christman v.

---

[6] The majority states that defendant threatened S.C. if she did not let him "grab her breast." Ante, ¶ 25. The trial court made no finding that defendant grabbed S.C.'s breast or threatened to do so. The only finding is that defendant touched defendant's breast.

15

Davis, 2005 VT 119, ¶ 6, 179 Vt. 99, 889 A.2d 746 (stating battery is "an intentional act that results in harmful contact with another" (citation omitted)).

¶ 39.   In essence, the majority has found that an intentional touching is violent behavior, a holding that greatly expands on the language of the probation condition, and because intentional touching is very common behavior in many contexts, creates broad discretion in probation officers to declare a violation.  More important to the case in front of us, this defendant cannot be found to have fair notice that violent behavior would be defined so broadly as to encompass the conduct he committed.  Although I do not defend defendant's conduct, our response cannot be to expand a probation condition beyond its commonly-understood meaning to find a violation.

¶ 40.   I dissent.

_____

Associate Justice