VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org




Case No.        25-AP-211

## ENTRY ORDER

JULY TERM,   2025

State of Vermont v. Nicolae Beldiman*    }   APPEALED FROM:
                                         }   Superior Court, Washington Unit,
                                         }   Criminal Division
                                         }   CASE NO. 25-CR-05440

In the above-entitled cause, the Clerk will enter:

Defendant was held without bail on May 29, 2025 pursuant to 13 V.S.A. § 7553a and appeals that decision under 13 V.S.A § 7556(d).  Accordingly, defendant is entitled to "review de novo by a single Justice of the Supreme Court forthwith."  Vt. Const. ch. II, § 40(2); see 13 V.S.A. § 7556(d); V.R.A.P. 9(b)(1).  Pursuant to 13 V.S.A. § 7556(d) and 4 V.S.A. § 22, the Chief Justice has specially assigned the undersigned superior judge to conduct the de novo hearing.

"In conducting a review de novo of a challenged finding or conclusion, a justice must come to an independent decision based on the record" and "[t]he justice need not pay any deference to the decisions of the lower court when reviewing the challenged findings and conclusions."  State v. Madison, 163 Vt. 390, 393 (1995).  The reviewing court may adopt "unchallenged findings and conclusions of the trial court."  Id. (emphasis omitted).  Here, the parties have stipulated to consideration of the record, with defendant supplementing the record with the testimony of a proposed responsible adult and the State submitting an affidavit summarizing alleged prior bad acts of defendant.  See V.R.A.P. 9(b)(1) ("The reviewing justice will conduct a de novo review based on the record and any additional evidence authorized by the justice for good cause shown.").

I.  Procedural and Factual Background

Defendant was arraigned on a three-count criminal information alleging, inter alia, aggravated stalking, in violation of 13 V.S.A. § 1063(a)(1), on May 29, 2025.  Defendant was held without bail pending a weight-of-the-evidence hearing, which was held on June 18, 2025.  Following the evidentiary hearing, the trial court continued the hold without bail with findings in support thereof being issued on the record.  The findings included the conclusion that aggravated stalking was a felony offense that involves an act of violence.

Defendant filed a timely notice of appeal and request for de novo review of the trial court's decision on June 23, 2025.  The Court took judicial notice of the fact that on June 24, 2025, defendant filed a motion in the trial court to strike the hold without bail order and release defendant to a responsible adult.  This appeal was placed on waiting status, with defendant's consent, and the matter was remanded to the trial court for purposes of adjudicating the motion, which the trial

court denied on the record on July 3, 2025. Thereafter, defendant affirmed his continued desire to pursue de novo review of the court's June 18, 2025 decision to continue to hold defendant without bail under § 7553a.

Consistent with an order of the Court, the parties filed written memoranda and the de novo hearing was held thereafter on July 15, 2025.

## II. Analysis

The State persists in its request to hold defendant without bail under 13 V.S.A. § 7553a based on the charge of aggravated stalking. Chapter II, § 40(2) of the Vermont Constitution[1] provides:

> A person accused of a felony, an element of which involves an act of violence against another person, may be held without bail when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence. A person held without bail prior to trial under this paragraph shall be entitled to review de novo by a single justice of the Supreme Court forthwith.

Statutory codification of the amendment occurred contemporaneously with only minor changes in language, specifically, "[a] person charged with an offense that is a felony, an element of which involves an act of violence against another person, may be held without bail when the evidence of guilt is great." 13 V.S.A. § 7553a(a) (emphasis added).

Irrespective of the slight variance in language, a clear three-pronged analysis is required before a defendant may be held without bail under this authority. First, the charged offense must be "a felony, an element of which involves an act of violence against another person," as that phrase is used in 13 V.S.A. § 7553a and Chapter II, § 40(2). Second, the evidence of guilt as to that offense must be great. Finally, if the first two prongs are satisfied, the State must further establish "the person's release poses a substantial threat of physical violence to any person," and that "no condition or combination of conditions of release will reasonably prevent the physical violence." 13 V.S.A. § 7553a. This analysis requires court consideration of conditions of release provided for under 13 V.S.A. § 7554(a)(1) and (2) to mitigate the risk of flight or to address public safety considerations.

Defendant has challenged the first prong of this analysis; thus, the Court is presented with the threshold question of whether aggravated stalking is a qualifying offense for purposes of Chapter II, § 40 and 13 V.S.A. § 7553a.[2] This appears to be a matter of first impression that has not been previously addressed by the Vermont Supreme Court, however, multiple decisions have established a framework of analysis when an offense is challenged on this basis.

As a starting point, State v. Filippo, a single-Justice decision, provides, in pertinent part:

---

[1] The Vermont Constitution was amended in 1994 by the passage of Proposal 7.

[2] Whether the offense is a felony is not in dispute by the parties.

Reviewing the statutory language, I am persuaded that "element" as it is used in § 7553a refers to the statutory components of the felony charged, and not the evidence that will be offered to prove the felony. Our paramount goal in statutory construction is to give effect to the Legislature's intent. We apply the plain meaning of a statute where the language is clear and unambiguous. Here, the ordinary, plain meaning of "element" is the traditional meaning associated with criminal charges, i.e., those constituent parts of a crime which must be proved by the prosecution to sustain a conviction. . . . There is no indication that the Legislature intended the term "element" to have a meaning other than its normal meaning in criminal law.

172 Vt. 551, 552 (2001) (mem.) (alteration omitted) (quotation omitted) (citations omitted). Additionally, Filippo prescribes strict focus on an offense's essential elements, not its factual circumstances:

Moreover, to accept the State's interpretation that "element" of violence should be read to include "proof of violence" would greatly increase the number of crimes to which § 7553a could potentially apply. This position is untenable given the presumption in Vermont that most prisoners are bailable. A broad expansion of § 7553a is therefore unwarranted.

Id. at 533 (citing Vt. Const. ch. II, § 40; 13 V.S.A. § 7554). The standard set forth in Filippo has not been challenged by other decisions considering the issue of qualifying offenses under 13 V.S.A. § 7553a.

Under 13 V.S.A. § 1063(a)(1), "[a] person commits the crime of aggravated stalking if the person intentionally stalks another person, and . . . such conduct violates a court order that prohibits stalking and is in effect at the time of the offense." Accordingly, the essential elements of aggravated stalking, in violation of 13 V.S.A. § 1063(a)(1), as alleged in this matter, are: (1) defendant; (2) purposefully engaged in a course of conduct directed at another person, encompassing two or more acts over a period of time, however short, in which he followed, monitored, surveilled, threatened, or made threats about the other person, or interfered with the other person's property; (3) defendant knew or reasonably should have known that the conduct would cause a reasonable person to fear for their physical safety, the safety of another, or cause the person to experience substantial emotional distress; (4) that the conduct was not a constitutionally protected activity; and (5) his conduct violated a court order, then still in effect, that prohibited stalking at the time of the conduct. See id. § 1061 (defining terms as used in § 1063(a)(1)).

The State has not made any specific elections in this matter and did not articulate which available theory or theories of criminal liability it intends to pursue at trial. Rather, the offense is alleged in general terms consistent with the broad statutory definitions set forth under 13 V.S.A. § 1061.

Further, although not an essential element of the offense, 13 V.S.A. § 1063(c) provides that "[c]onduct constituting the offense of aggravated stalking shall be considered a violent act for the purposes of determining bail." The State asserts that the Legislature's adoption of this language should be considered dispositive on the issue of whether aggravated stalking is a qualifying offense,

3

noting that this language was adopted contemporaneously to the constitutional amendment permitting defendants to be held without bail in cases involving a violent felony offense.

The State's position is not persuasive, however, in view of the Vermont Constitution's limitations on legislative power. The Legislature "shall have all other powers necessary for the Legislature of a free and sovereign State; but they shall have no power to add to, alter, abolish, or infringe any part of this Constitution." Vt. Const. ch. II, § 6. Thus, statutes that attempt to modify application of a constitutional provision, or redefine such, must be viewed with caution—especially in circumstances where legislative action may infringe upon an important right, to include a criminal defendant's liberty interests. Consistent with this principle, the Court's "review of the facial constitutionality of a statute is plenary and nondeferential." Ferry v. City of Montpelier, 2023 VT 4, ¶ 26, 217 Vt. 450 (citing State v. Noll, 2018 VT 106, ¶ 21, 208 Vt. 474).

Consistent with this standard, 13 V.S.A. § 1063(c) must be considered a nullity insofar as it purports to impute an element of violence into the offense.[3] The Legislature has added comparable language to other offenses,[4] with the absence of such language having have been addressed in at least one prior decision.

Specifically, in State v. Madigan, a single justice found the absence of this form of express statutory language characterizing lewd or lascivious conduct with a child to be relevant to the question of whether the offense contained an element of violence. No. 2011-103, 2011 WL 4974812, at *3 (Vt. Mar. 25, 2011) (unpub. mem) [https://perma.cc/ZK99-7EWK] ("I am more persuaded, however, by the Legislature's failure to specifically state that conduct constituting the offense of lewd or lascivious conduct with a child should be considered a violent act for the purpose of determining bail in any of its recent amendments to § 2602. The Legislature made an explicit directive of this kind for first degree aggravated domestic assault, 13 V.S.A. § 1043. It knew how to bring offenses within § 7553a but did not do so for § 2602."). The Legislature amended 13 V.S.A. § 2602 shortly after this decision was rendered. See 2015, No. 43, § 1 (designating "[c]onduct constituting the offense of lewd and lascivious conduct with a child" as "a violent act for the purpose of determining bail"). . Ultimately, the holding in Madigan that lewd or lascivious conduct with a child does not contain an element of violence is grounded in the conclusion that the "crime does not require touching or contact, let alone a touching that could be characterized as physically forceful." 2011 WL 4974812, at *3 (citing State v. Wiley, 2007 VT 13, ¶ 11, 181 Vt. 300). Madigan,

---

[3] This is not to say that the directive to consider the offense a "crime of violence" is not applicable in other contexts where there the Legislature has created its own requirements or standards. For example, 13 V.S.A. § 7554(b)(2) provides for consideration of "[r]ecent history of actual violence or threats of violence" when courts consider the "the character and mental condition of the accused" for purposes of imposing conditions of release. Likewise, the Legislature has defined a set of "listed offenses" under 13 V.S.A. § 5301(7) that is controlling as to whether the convictions subject to supervision are considered violent or nonviolent for purposes of holding a defendant without bail upon a finding of probable cause for a violation of probation. See 28 V.S.A. § 301(4)-(5). The Legislature has also limited authority to impose a responsible-adult condition to such offenses "[i]f the judicial officer determines that the defendant presents a risk of flight from prosecution.". See 13 V.S.A. § 7554(a)(1)(A).

[4] See, e.g., 13 V.S.A. § 1043(c) (relating to first-degree aggravated domestic assault); 13 V.S.A. § 2602(f) (relating to lewd or lascivious conduct with a child).

4

however, did not assess the sufficiency of a legislative mandate that the offense contain an "act of violence"; rather, the absence of such designation was viewed to be in accord with the court's own reasoning. Id.; cf. State v. Perron, No. 24-AP-163, 2024 WL 3416096 (Vt. July 12, 2024) (unpub. mem.) [https://perma.cc/ATG3-MDW7] (finding Legislature's classification of offense as violent to bolster Court's conclusion based on assessment of elements).[5]

In plain terms, the Legislature lacks the authority to "shoehorn" criminal statutes into the limited category of qualifying offenses under Chapter II, § 40. It is the judiciary, not the Legislature, that is granted the authority to interpret constitutional standards when an ambiguity or uncertainty exists.

While the scope of this decision and its future precedential value is inherently limited, the full Court has addressed the broad topic of constitutional interpretation, observing that:

> "The standards for interpreting constitutional language and meaning, though related, are not the same as for ordinary statutes. Canons of construction, if applied, must be used more cautiously and sometimes differently. This is so because a constitutional provision, unlike a statute, usually operates to limit or direct legislative action. The value of resort to any claimed legislative intent in a constitutional amendment is considerably dissipated by the elaborate adoption procedures that also involve the workings of constitutional commissions and subsequent submission of the proposals to the people of this state."

Turner v. Shumlin, 2017 VT 2, ¶ 24, 204 Vt. 78 (quoting Peck v. Douglas, 148 Vt. 128, 132 (1987)). Thus, the Legislature may not mandate whether an offense does or does not "involve[] an act of violence" where such pronouncement would undermine a constitutionally guaranteed liberty interest. See Vt. Const. ch. I, art. 9 ("[E]very member of society hath a right to be protected in the enjoyment of life, liberty, and property."); Vt. Const. ch. I, art. 10 ("[N]or can any person be justly deprived of liberty."). Likewise, the Court cannot adopt the position of the State that the Legislature's adoption of 13 V.S.A. § 1063(c) near in time to 13 V.S.A. § 7553a is particularly compelling or relevant to the analysis.

Turner provides a relevant context and segue for consideration of the elements of aggravated stalking. Prior judicial interpretation of the term "violence" has focused on the plain meaning of the term. See, e.g., State v. Bulson, 2024 VT 15, ¶ 10 (mem.) (citing State v. Pellerin, 2010 VT 26, ¶ 7, 187 Vt. 482); Filippo, 172 Vt. at 552. State v. Perron provides summary of prior interpretations and observed "there is no need to start this inquiry with a clean slate":

---

[5] After determining that "[t]he threatened use of a possessed deadly weapon against another person . . . fit[] within the definition of 'violence'" the Court recognized that "[b]uttressing" that conclusion was "the fact that the Legislature has expressly labeled aggravated assault under 13 V.S.A. § 1024 as a 'violent' felony in other circumstances." Perron, 2024 WL 3416096 at *5. Further, the Court determined "[t]hat the Legislature classified the entirety of § 1024 as a violent felony with various other indisputably violent felonies bolsters the conclusion that it also intended § 1024(a)(5) to qualify as a violent crime for purposes of § 7553a." Id.

This Court has previously examined the definition of "violence" for purposes of § 7553a on a number of occasions. In State v. Madison, this Court relied on an expansive dictionary definition of "violence" to include an "abusive or unjust use of power." Over twenty years later, that broad definition was endorsed in the probation context, with this Court also noting that one dictionary definition determines whether an act is violent by considering it "with reference to its effect on the recipient." Thus, we have held that the "creation of fear of imminent serious bodily injury is that type of abusive or unjust use of power contemplated by § 7553a."

2024 WL 3416096, at *4 (alterations omitted) (first quoting Madison, 163 Vt. at 395; then quoting State v. Bryan, 2016 VT 16, ¶ 24, 201 Vt. 298; and then quoting State v. Watson, No. 2012-308, 2012 WL 6827284, at *2 (Vt. Oct. 3, 2012) (unpub. mem.) [https://perma.cc/P9GD-5GSS]).[6]

Both the State and defendant have relied on Perron in their respective memoranda and arguments, with the State endorsing the view that this matter presents the type of "abusive and unjust use of power that fits within the definition of 'violence' under § 7553a." Id. at *5 (citing Bryan, 2016 VT 16, ¶ 24). The Court in Perron also observed that the offense of aggravated assault with a deadly weapon, in violation of 13 V.S.A. § 1024(a)(5), requires the State "to prove both defendant's subjective intent to threaten to harm the victim with the possessed deadly weapon, and that a reasonable person would fear bodily injury." Perron, 2024 WL 3416096, at *5 (citation omitted). Thus, "it clearly follows that this crime requires proof of an act of violence against another." Id. In State v. Combs, the Court narrowed the inquiry as to whether an offense "has an element that relates closely to an injurious or destructive act toward another." State v. Combs, No. 23-AP-185, 2023 WL 4348874, at *4 (Vt. July 3, 2023) (unpub. mem.) [https://perma.cc/45NW-SM5Y].

Defendant's arguments draw a contrast between the offense addressed in Perron, aggravated assault with a deadly weapon, and the offense of aggravated stalking, properly emphasizing the distinction in essential elements. This reasoning is persuasive, even in view of the "expansive" definition of violence endorsed by Madison, Watson, and Perron.

Notably, aggravated assault with a deadly weapon entails the pairing of a specific intent to threaten with contemporaneous means to effectuate the threatened violence. See 13 V.S.A. § 1024(a)(5); Perron, 2024 WL 3416096, at *4 (discussing essential elements). The essential elements of aggravated stalking do not share this combination of motive and means; rather, criminal liability may result from actions that trigger "substantial emotional distress," in lieu of bodily injury or serious bodily injury. See, e.g., Watson, 2012 WL 6827284, at *1-2 (referencing "creation of fear of imminent serious bodily injury"). Moreover, an aggravated stalking conviction may be premised upon as few as two instances of interfering with another person's property, assuming that a defendant should have reasonably known such conduct would cause or was reasonably likely to

---

[6] Madison, as referenced in Perron, did not specifically adopt the broad definition quoted; rather, in context, the decision noted that "[e]ven if a narrower definition of 'violence' is used, that is, 'physical force employed so as to violate, damage, or abuse,'" the court's ultimate conclusion would not have been impacted. Madison, 163 Vt. at 395.

cause the victim to experience substantial emotional distress (assuming the other elements were also satisfied).

Undeniably, some cases involving stalking may include threats of violence or include actions best characterized as abusive or unjust uses of power—particularly in the context of intimate-partner violence. However, the breadth of the statute and consideration of its elements precludes the conclusion that the offense necessarily requires proof of an act of violence. Perron concluded that "[t]here is no sound basis to conclude that the term 'violence' under § 7553a demands actual physical contact," 2024 WL 3416096, at *5, and such reasoning is not in conflict with the conclusion here. Instead, the illustrative examples referenced in Perron featuring an absence of direct physical contact or bodily injury are premised upon (1) a specific intent to cause serious bodily injury, or (2) willfully placing another in fear of serious bodily injury. Id. (citing State v. Downing, 2020 VT 97, ¶¶ 1, 7, 213 Vt. 643 (mem.), as amended (Oct. 29, 2020); Watson, 2012 WL 6827284, at *2).

An aggravated stalking prosecution does not require the State provide proof of any intent to cause bodily injury. The State must prove that a defendant only knew or reasonably should have known that the conduct would cause a reasonable person to fear for his or her physical safety, the safety of another, or cause the person to experience substantial emotional distress. 13 V.S.A. §§ 1061, 1063. This is a considerably lesser standard than other situations where the Court has found attempts or threats sufficient to constitute acts of violence. There is simply no requirement for the State to prove that a defendant's conduct amounts to an "injurious or destructive act" that has been viewed to be commensurate with the definition of "violence." See Combs, 2023 WL 4348874, at *4.

Ultimately, aggravated stalking does not include an essential element involving an act of violence. It may entail conduct that could be described as frightening, obnoxious, menacing, or even threatening, however, the constitutional standard is exacting and calls for a greater degree of prospective or actual harm. Based on the charged offense failing to constitute a qualifying offense under the 13 V.S.A. § 7553a standard, the Court does not reach findings as to the remaining prongs of the analysis.

Reversed and remanded; mandate to issue forthwith.[7]

FOR THE COURT:

Rory T. Thibault, Superior Judge,
Specially Assigned

---

[7] The order holding defendant without bail is vacated. Additionally, the Court has elected to, by separate entry, issue interim conditions of release pursuant to 13 V.S.A. § 7554 pending remand to the Superior Court.